No. 13,586.

SUCCESSION OF JULES M. BURGUIERES.

SYLLABUS.

1. To constitute an adjudication of property, owned in indivision between a father and his minor children, to the former, something more is required than the recommendation of a family meeting that the adjudication be made, than the appraisement of the property by experts, and than an order of court homologating and approving the proceedings of the family meeting.

2. These are proper and necessary as far as they go, but in addition there must be a judgment or decree of court formally adjudicating the property to him, and this judgment, or an act of adjudication based upon the same, must be recorded in the mortgage records.

A PPEAL from the Civil District Court, Parish of Orleans.— *Ellis, J.*

*Philip H. Mentz* for Mrs. Ida L. Burguieres, Tutrix, Appellee.

---

*Saunders & Gurley* for Movers to Correct Inventory, Appellants.

---

The opinion of the court was delivered by

BLANCHARD, J. The late Jules M. Burguieres was twice married. His first wife died February 28, 1890.

He opened her succession, obtained an order for the taking of an inventory of the property and effects of her estate and applied for confirmation as natural tutor to the children of the marriage, all of whom were then minors.

The inventory was taken, an abstract thereof recorded in the mortgage records and an order then issued for his appointment and confirmation as natural tutor and for the appointment of Lenfray P. Patout as under-tutor.

They both qualified and letters of authority were issued to them.

A few days later Mr. Burguieres petitioned the court to have certain property which had belonged to the community between himself and his dead wife, and which was then owned in indivision by him and his children (her heirs), adjudicated to him pursuant to the provisions of Article 343 of the Civil Code.

Experts were appointed by the court to estimate and appraise the value of the property and a family meeting was ordered convened to consider the advisability of the adjudication.

The experts duly appraised the property and fixed its value, and the family meeting was held and recommended the adjudication of the same to the surviving husband and father at the valuation fixed. In this recommendation the under-tutor concurred.

On the same day Mr. Burguieres applied to the court to homologate the proceedings of this family meeting.

The prayer of the petition was as follows:—

"That your Honor homologate the proceedings of the family meeting held before J. Sully Martel, notary public, on the 18th of March, 1891, advising the adjudication to Jules M. Burguieres of certain property belonging to the community heretofore existing between said Burguieres and his deceased wife, Marie Corinne Patout, and inherited by the minor heirs of the latter, which property is fully described in said

proceedings, at the price of the estimation placed thereon by the experts appointed."

Whereupon the clerk of the court, in the absence of the judge from the Parish (St. Mary), made and signed this order:—

"Let the proceedings of the family meeting of the friends and relatives of the minors, J. P., Denis, Joseph E., Marie Louise, Florence C., Jules M., Ernest, Henry I. and Charles P. Burguieres be and they are hereby homologated and approved."

The family meeting had done nothing more and could do nothing more than advise and recommend the adjudication.

The petition to the court which followed prayed only that the proceedings of the family meeting be homologated.

There was no prayer for an order, decree, or judgment adjudicating the property to Mr. Burguieres.

The only order in the premises was made by the clerk of court, and that did nothing more than approve and homologate the proceedings of the family meeting. It does not purport to adjudicate the property.

There does not, then, appear to have been either a decree of adjudication of the property to Burguieres, nor the execution of any kind of an act making the title over to him. Neither were the proceedings of the family meeting or the order of the clerk homologating the same recorded in the conveyance or mortgage records of the parish during his lifetime.

Less than a month following the holding of this family meeting Mr. Burguieres married a second time.

Some four years later, in March, 1895, he presented a petition to the court wherein he averred that on the advice of a family meeting held in March, 1891, certain property was "by the order homologating the proceedings of said family meeting adjudicated to him as surviving partner in the community which had existed between himself and his deceased wife."

It was then set forth that he desired to be authorized to give a special mortgage in lieu of the general mortgage resulting from the adjudication then made to him.

The prayer of the petition was that a family meeting be convened to advise touching the interest of his minor children "in the matter of annulling the mortgage arising from the aforesaid adjudication and

substituting therefor a special mortgage on the two plantations above referred to."

These plantations were those which figured on the inventory as the "Cypremort" and "Florance" plantations.

The family meeting was ordered and held. It advised that certain described property:

"be released from the general mortgage now existing in favor of the said minor children, which mortgage results from the adjudication to said Jules M. Burguieres of a part of the said community property under the advice of a family meeting held before the same notary public on the 18th of March, 1891, duly homologated and approved and * * * in lieu thereof that the said Jules M. Burguieres be and he is hereby authorized and empowered to substitute therefor a special mortgage in favor of his said minor children for the sum of $75,644, this being one-half of the price at which the said property held in common between him and his said minor children was adjudicated to him."

This was followed by advising upon what property the special mortgage should be placed, which was the "Cypremort" and "Florance" plantations aforesaid.

The under-tutor approved these recommendations, and the judge made an order homologating the proceedings and directing that the proposed special mortgage:

"be accepted and that the general mortgage resting on the property adjudicated to J. M. Burguieres on March 18th, 1891, be annulled."

On the same day the special mortgage was executed, the under-tutor accepting same for and on behalf of the minors. It was duly registered in the mortgage records on April 8, 1895.

In October, 1899, Mr. Burguieres died. His succession was opened in the Parish of Orleans where he then resided.

On the inventory taken of the property of his estate the "Cypremort" and "Florance" plantations were put down as belonging at the time of his death to himself and his children of the first marriage.

In other words, the position was taken that no sufficient adjudication of the minor's interest in the property had ever been made to divest their title and to invest the ownership of the same solely in the father.

Whereupon, his surviving widow, who had qualified as natural tutrix of her minor daughter, the only issue of the second marriage, brought the present action to have the two plantations aforesaid declared the separate property of her deceased husband, as having been duly adjudicated to him as surviving spouse in community of the first marriage, and to have the inventory corrected so as to show ownership of the

whole of said property in the succession of Jules M. Burguieres, instead of the undivided half thereof.

The prayer is that the property be decreed to have been duly adjudicated to said Burguieres before his marriage with the petitioner.

Before the suit was brought she caused the *proces verbal* of the family meeting which advised the adjudication, together with the petition for its convocation, the order therefor and the order homologating the proceedings, to be recorded in the mortgage records of the Parish of St. Mary. This was six months after the death of Jules M. Burguieres.

It does not appear that registry of the same ever took place in the conveyance records of the parish.

The testamentary executors of the deceased, the major heirs of the first marriage, and the tutor of the minor heirs were made parties defendant.

They answered to the effect that no sufficient legal or valid adjudication of the interest of the children of the first marriage in the property had ever been made or perfected to their father during his lifetime, that the same had continued to be owned by him and his said children of the first marriage up to the time of his death, and that, therefore, the inventory correctly described and fixed its *status*.

The judgment below held the adjudication to have been sufficient and ordered the inventory corrected so as to show full ownership of the property in the deceased at the time of his death.

This appeal by the executors and heirs followed.

The question arising for determination is:—Did the acts and things done relied on by plaintiff as establishing Burguieres' acquisition of his deceased wife's interest in the property constitute its adjudication to him?

Did his petition for the adjudication, the appraisement by experts, the recommendation of the family meeting and the order approving and homologating this recommendation—nothing else, not even registry in the conveyance and mortgage records—suffice to divest the ownership of the minors in the property?

We must hold not. The law contemplates a formal order, or judgment, or decree of adjudication. This is something very much more than a mere order homologating the proceedings of the family meeting. The order of homologation was proper and necessary and good as far

as it went, but it did not go far enough. It should have been followed by a decree of adjudication.

C. C. 343, which is the law authorizing the parent to thus acquire the interest in property held in indivision with the minor children, recites that such parent may "cause to be adjudicated" to him or her *after* a family meeting shall have declared that the adjudication is for the interest of the minor.

"Adjudication," in the sense of this article of the Code, means "an assignment by judgment; the adjudging of the ownership of a thing by a court."

See Burrell's Law Dictionary, *verbo* "Adjudicatio."

This author says, referring to and naming three actions for partition recognized by the Roman Civil Law:—

"In these actions the judge has the right to adjudge to one or the other of the co-heir or part owner the exclusive proprietorship of a thing hitherto held in common, and his judgment transfers, *ipso jure,* the property in the thing adjudged."

The family meeting must act favorably on the proposition to adjudicate, the court must approve and homologate these proceedings, and then must follow a formal judgment or decree making the adjudication. Without the latter the investiture of the title in the parent does not take place.

There has been here *no act* of adjudication such as the law directs.

"When mortgagable property has been adjudicated to either parent of the minor," declares R. S. 2363, *"the act of adjudication* shall be recorded in the book of mortgages in the parish in which the property is situated, and it shall operate a mortgage and vendor's privilege; the amount of the value of the property, as stipulated *in the act,* shall operate a mortgage against such property in favor of the minor; *and no such adjudication shall have any legal or binding effect until such record is made."* (Italics ours).

Not only must there be a decree of adjudication, but this decree or act of adjudication must be registered as R. S. 2363 directs. Else there is no divestiture of the title of the minors.

In Winters vs. Tournoir, 25 La. Ann. 611, the court said:—

"John C. Clark, the father of plaintiff, died in 1853, leaving a widow, two minor children and a considerable estate, all community property. One of the children died soon after and on twenty-eighth March, 1855, *judgment was rendered and signed, adjudicating all the*

*property to the widow* at the appraised value, which judgment was recorded, etc." (Italics ours).

Further along in the same case, the court said:

"The judgment, which in this instance is the act of adjudication, stipulating the amount of property held in common with the minor and adjudicated to the widow, was duly recorded in the book of mortgages and was, we think, a compliance with the said law."

This authority is pertinent here in that it sustains the view that a judgment or decree of adjudication is necessary.

The same is true of Succession of Boullemet, 39 La. Ann, 1046, and of Orr vs. Thomas, 3 La. Ann. 582.

In Heirs of Bedell vs. Hayes, Tutrix, 21 La. Ann. 643, language is used which would seem to indicate the view of the author of the opinion to be that the mere approval and homologation of the proceedings of the family meeting recommending the adjudication sufficed to transfer the property. But the facts of that case are considered too dissimilar, and the point at issue too inapposite, to constitute it an authority to be followed here.

What was done in 1895, looking to the substitution of a special mortgage in lieu of the general mortgage, did not have the effect of curing the antecedent lack of formal adjudication of the minors' interest in the property to their father.

The *status* of the property as to its ownership, between the father and his children, is to be judged at the time the father died. The registry in the mortgage book, subsequent to his death, of the proceeedings of the family meeting held in 1891, and the order of court homologating same, did not alter that *status,* which was one of ownership in indivision between the father, on the one hand, and his children of the first marriage on the other hand.

For these reasons, it is ordered, adjudged and decreed that the judgment appealed from be avoided and reversed, and that the demand herein be rejected at plaintiff's costs in both courts.