(35 South. 632.)

No. 14,129.

BRIAN v. BONVILLAIN et al.

(June 21, 1902.)

ESTOPPEL BY DEED—JOINT OWNERSHIP—POSSESSION—IMPROVEMENTS — PARTITION — ACCEPTANCE OF SUCCESSION—RIGHTS OF ASSIGNEE.

1. The principle of estoppel, as announced in Brian v. Bonvillain, 28 South. 261, 52 La. Ann. 1794, is reaffirmed.

2. Where one or more joint owners of real estate have held actual possession of the whole of the same as owners in good faith, under title translative of property, for a number of years, and have, while in such possession, paid taxes and made valuable permanent improvements upon the property, they are entitled to continue the sole actual possessors of the whole until the liquidation and settlement of the rights of parties through a partition. McNeely v. McNeely, 24 South. 338, 50 La. Ann. 839.

On Rehearing.

3. A false representation or concealment of material facts is an essential element of estoppel.

Where all the parties knew the facts, but were mistaken as to the law, there is no basis for estoppel en pais.

4. General recitals in a written instrument do not estop the parties from disputing the statements made in them.

5. Where an heir has accepted a succession unconditionally, and been put in possession conjointly with his coheirs, he succeeds to the legal title of the intestate, and his assign is entitled in a petitory action to be recognized as owner of the undivided interest inherited and sold. The question whether the purchaser acquired title subject to collations is not raised by the pleadings, and need not be considered.

(Syllabus by the Court.)

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary. Albert Campbell Allen, Judge.

Action by Alexis Brian against A. A. Bonvillain and others. Judgment for plaintiff, and defendants appeal. Affirmed.

For former opinion, see 52 La. Ann. 1794, 28 South. 261.

Philip H. Mentz and D. Caffery & Son, for appellants. Foster, Milling, Godchaux & Sanders and William Cullen Roberts, for appellee.

Statement of the Case.

NICHOLLS, C. J. This case was before us in 1900, and was remanded. The pleadings and facts, as far as they could be then ascertained, will be found reported in 52 La. Ann. 1794, 28 South. 261. The cause was remanded to have the minor children of the defendant made parties, so that the issues raised should be disposed of at one and the same time, contradictorily between all parties in interest. On the return of the case a tutor was appointed and qualified to the minors, who filed an answer in their behalf. The case was tried and judgment rendered in favor of the plaintiff, and the defendants appealed. We were in hope that, under the opportunity afforded by the remanding, testimony would be introduced explanatory of some matters which certainly called for explanation, but the record returns to us very little different from what it was as it first came before us.

In the first opinion we said: "Recitals in several of the acts offered in evidence are perplexing in character, particularly those in the act between Mrs. Gracieuse Cornen, widow of Edouard Sigur, and her grandson J. Oscar Sigur, the vendor of the plaintiff, and those in the act of exchange between Gracieuse Sigur, wife of C. E. Noveret, and J. Oscar Sigur and the children of Clara Sigur, deceased wife of G. Callery, who was a daughter of Edouard Sigur." The act referred to between Mrs. Gracieuse Cornen (Mrs. Edouard Sigur) and J. Oscar Sigur was an act of donation by Mrs. Sigur to her grandson Oscar of one-sixth of the plantation known as the "Home Place." The heirs of Mrs. Callery were parties to this act. The act declares that "this donation is made not subject to any future collation by said donee as an heir of said donor, but is donated to the said Oscar Sigur for the purposes of the settlements this day made among and with their heirs of said estate" (succession of Edouard Sigur). The Callery heirs declare that they "take cognizance of the donation and transfer hereinbefore made and they do

ratify and confirm the same as herein made and donated, and that said property shall not hereafter be subject to any collation on the part of said donee as heir of his grandmother; and they hereby each for himself fully and freely relinquish and abandon to the said Joseph O. Sigur all their respective rights, claims and demands in and to all said real property hereinbefore donated by them and each of them, held and owned as heirs and legal representatives of the estate of Edouard Sigur, and recognizing and warranting and guaranteeing the title to said tract of land as complete, perfect and irrevocable."

The only portion of the morturia proceedings in the matter of the succession of Edouard Sigur, or connected therewith, in the record, is the inventory taken in the succession, and this act of donation. We are not informed what the settlements were which are referred to in the act of donation as those "that day made between the donor and the heirs of Edouard Sigur and the heirs themselves inter se," which settlements seem to have brought about, or at least to have influenced the mother in making, the donation to Oscar Sigur, and making it free from collation. The purpose and scope of the relinquishment by the Callery heirs "of all their rights, claims, and demands" is not explained. What disposition between these parties was made of the Richland Plantation does not appear. We do not understand how or why the Callery heirs and Oscar Sigur obtained as large an interest in that plantation as they seem later to have had in it; nor do we understand why, in the act of exchange made by Mrs. Noveret of a sixth interest in the Richland Plantation for a third interest in the Home Plantation, Mrs. Noveret conveyed any portion of her said interest in the Richland Place to the Callerys. We can only deal with the rights of parties as we have knowledge of the situation from the record. If the defendants cannot explain how it is that Oscar Sigur appears to have, if he does not really have, an interest of one-ninth in the Home Plantation, we ourselves are unable to explain it. We understand the defendant on the first trial to concede that Oscar Sigur had in fact a ninth interest in the Home Plantation at the time of his sale of the plantation, but

that he had estopped himself from claiming that interest by reason of his participation in the settlements made in the Succession of Mrs. Edouard Sigur, and the various acts of transfer connected therewith. Most of the evidence taken in the district court upon the return of the same was to establish that Oscar Sigur was fully advised of every step taken at that time, and that everything he did at that time was with full knowledge. Oscar Sigur himself testified that, if any act on his part had the effect or might have the effect of compromising his rights, it was done in error of fact. If the view of the legal situation which we took on the first trial of estoppel, as affecting third parties, innocent purchasers without notice, was a correct one, it would matter little whether we erred in making the statement we did in the original opinion, that, although Oscar Sigur was in and about the premises at the time of the execution of the different acts then passed between different parties, his attention was not particularly directed to any of them, for it would only be upon the hypothesis that the estoppel extended beyond Sigur and to the plaintiff that he would be concerned in that particular question. As we hold title of the defendant A. A. Bonvillain to be good and complete without invoking estoppel, the only parties in raising and maintaining that issue are the minors holding title under the donation from their grandmother Mrs. Noveret to their mother, the first wife of the defendant Bonvillain. As the minors were not legally parties to this suit after its return to the district court, nothing heretofore said affects them. The matter before us is an original one. This court in reality decided no issue at the first hearing. It announced certain conclusions of fact drawn from the evidence, the correctness of which are not disputed, but conceded, but having discovered of itself at the last moment that the minors, the real parties in interest, were not before the court, it remanded the cause to be further proceeded with. What was said at that time as to estoppel was not called for, and, for the purposes of this case, must be considered not written.

The counsel for the defendants say in their brief that they submit that in the argument of the case in 1900 it was contended by the counsel for the defendants, and, as they

thought, with good reason, that the transfer from Oscar Sigur to the plaintiff, Brian, was an aleatory contract; that in this court's opinion no mention was made of that argument or of the facts on which it was predicated. That is true, for the reason it was thought, from what was said in the argument, that it was conceded as a fact Oscar Sigur still held a ninth interest in the Home Place unless he had forfeited it by estoppel. We shall direct our attention first to what the contract between the plaintiff and Oscar Sigur was.

The contract was one of exchange. In the act Oscar Sigur declared that he did thereby grant, bargain, sell, assign, convey, set over, and deliver into, and give in exchange unto, Alexis Brian, all his right, title, interest, and claim and demand in and to all the immovable property owned by Hermogene Sigur, his father, Edouard Sigur, his grandfather, and Mrs. Gracieuse Cornen, his grandmother, at the time of their respective deaths; he being the son of Hermogene Sigur, and the grandson of Edouard Sigur, and his wife and the said Oscar Sigur inheriting from them. "And the said Oscar Sigur hereby specially transfers all the right, title, interest, and claim which he has in and to the following described real estate, situated in the parish of St. Mary, on the Cypremort Bayou, and described as [here follows a description of certain specified real estate]; also all his right, title, interest, claim, and demand in and to that certain tract of land known as the 'Home Place,' and described in the inventory of the succession of Edouard Sigur as that certain sugar plantation lying and being situated [here follows a description of the Home Place], * * * same being community property between Edouard Sigur and his wife, Gracieuse Cornen; also a tract of swamp land situated southeast [describing this tract], and also a tract of swamp land situated [describing this tract]; * * * the last above mentioned tracts of swamp land and the plantation described as the Home Place being the property of Edouard Sigur and his wife, Mrs. Gracieuse Sigur, and the said Mrs. Sigur owning an undivided third therein at her death, and vendor [Oscar Sigur] being one of her three heirs, and entitled to one-third of her estate, being so decreed by judgment of the honorable 17th Judicial District Court, said vendor transfers, for the consideration hereinafter set forth, his entire interest in all of the above-entitled lands, together with all the fruits and revenues thereon. The full intent and meaning of this transfer and exchange is that the said Oscar Sigur transfers to the said Alexis Brian all the right, title, interest, claim, and demand which he now has in any lands situated in or near Cypremort Prairie, parish of St. Mary, whether same was acquired by donation, inheritance, exchange, or purchase, it matters not whether same is particularly described herein, together with all the fruits and revenues due thereon. To have and to hold the above-described property unto the said Alexis Brian, his heirs and assigns, in full property, free forever from any lien, mortgage, or encumbrance whatever, with full and general warranty, and with full subrogation to all the rights of warranty or other rights as held therein by said vendor." Brian declared that he accepted this transfer, and "in consideration of the transfer to him of the interest of the said Oscar Sigur in the above-described property, and of whatever interest the said Oscar Sigur may now have in the succession of his father, grandfather, and grandmother, as herein set forth, he does give in consideration thereof one hundred dollars cash, and bargain, sell, set over, and deliver and give in exchange his one undivided fifth interest in the following described property [here follows the description of the land given in exchange]."

This act of exchange was executed on the 18th of August, 1898.

The judgment of court to which allusion is made in this act was a decree of the district court for the parish of St. Mary, dated on the 13th of July, 1894.

It read as follows:

Succession of Mrs. Gracieuse Cornen, Widow of Edouard Sigur, Both Deceased.

"Parish of St. Mary, 17th Judicial District Court.

"No. 2,749.

"Judgment Putting Heirs in Possession.

"The application of the persons named herein to be recognized as the sole heirs of

Mrs. Gracieuse Sigur (née Cornen), deceased, lately residing in the parish of St. Mary, and who was the surviving widow of Edouard Sigur, deceased, and to be put in possession of her entire estate, having been duly fixed for hearing, and at said hearing the law and the evidence being in favor of the said applicants, and the deceased being shown to have died intestate.

"It is therefore ordered, adjudged, and decreed that the following named persons be, and they are hereby, recognized as the sole heirs of the said deceased, and as bearing the relationship to her which is herein stated: Mrs. Gracieuse Sigur, a daughter of said deceased, and who is the widow of Charles E. Noveret, being the heir of one-third the succession; J. Oscar Sigur, a grandson of said deceased, and who is the sole issue of the marriage of Hermogene Sigur, a son of said deceased, (now also dead) with Louise E. Decuir, and who is entitled to one-third of the said estate; Mrs. Bertha R. Callery, wife of Dr. George P. Minvielle, L. Emile Callery, Joseph E. Callery, Charles Hermogene Callery, and John A. Callery; these five persons being the grandchildren of the said deceased, and being the sole issue of the marriage of Clara Sigur, now deceased, with Gustave Callery, now surviving, these five being entitled to one-third of the said estate.

"And it is further ordered, adjudged, and decreed that the aforesaid persons be, and they are hereby, declared entitled to the possession of the said estate, in its entirety, in the proportion above named to each, of whatever the said estate may consist.

"Done, read, and signed in Chambers at Franklin, Louisiana, this 13th day of July, one thousand eight hundred and ninety-four (1894).      [Signed]      A. C. Allen,

"Judge 17th Judicial District Court."

"Filed in evidence December 13/'99.

"[Signed]                          Ed Thorp,

"Dy. Clerk."

This judgment does not seem to have been recorded. The application on which it was based is not in the record, nor is any other portion of the mortuary proceedings. We do not know of what property the succession of Mrs. Edouard Sigur consisted. As far as we can ascertain, all that she left was her un-divided interest of one-third in the Home Plantation, and the crop thereon, belonging to the partnership of Noveret & Sigur, in which she was one of the partners. This crop was partitioned between all the parties in interest on the 14th May, 1894.

On that same day Mrs. Noveret, one of the three children of Mrs. Edouard Sigur, purchased by authentic act from the children of Clara Sigur, a predeceased daughter of Mrs. Edouard Sigur, who had married Gustave Callery, "the one undivided third of that certain tract of land known as the 'Home Plantation,' formerly the property and residence of their grandmother and grandfather Edouard Sigur and his wife, both now deceased, lying and situated [here follows a description of the Home Place, the lands being identically the same as are described in an act of donation by Mrs. Gracieuse Sigur, née Gracieuse Cornen, wife of Edouard Sigur, passed before B. Shepherd, notary public in this parish, on the 27th of December, 1884, and in an act of sale by J. O. Sigur to Mrs. Gracieuse Sigur, wife of Charles E. Noveret, passed before the same notary on the same day]." The price of this sale by the Callerys was $12,812. Oscar Sigur was one of the witnesses to this act. On the same day, 14th May, 1894, Mrs. Noveret sold to her son-in-law A. A. Bonvillain, one of the defendants in this suit, as described in the act of sale, "the undivided one-half of a certain sugar plantation known as the 'Home Place,' formerly the property and residence of Edouard Sigur and his wife, both now deceased, lying and being" (here follows a description of the plantation as was given in the sale of the Callerys to Mrs. Noveret, with the added words, "being also the identical property, the undivided one-third of which was this day sold by L. Emile Callery, Joseph E. Callery, Charles Hermogene, John A. Callery, and Mrs. Bertha R. Minvielle to Mrs. Gracieuse Sigur, wife of Charles E. Noveret, by act passed before Charles A. O'Neill, notary public"). The price of the property was $19,000. On the same day, May 14, 1894, Mrs. Noveret donated to her daughter Elmire, the wife of the defendant A. A. Bonvillain, as described in the act of donation, "the undivided half of the following described property, to wit, that certain tract of land or sugar plantation known as the 'Home

Plantation,' formerly the property and residence of Edouard Sigur and his wife, both now deceased, lying and being [here follows the description of the property as described in the act of sale from Mrs. Noveret to Bonvillain of the other undivided half]." The property donated was estimated at $19,000, and the donation was made subject to collation by the donee.

On the same day, May 14, 1894, a paper headed, "Agreement and Settlement between the Heirs of Mrs. Gracieuse Cornen, Deceased, Widow of Edouard Sigur, Deceased," was signed by the Callerys, J. O. Sigur, and Mrs. Noveret.

This act was acknowledged the same day before O'Neill, notary.

As the parties attach special importance to this act, it is copied in full:

"State of Louisiana, Parish of St. Mary.

"Agreement and Settlement by and between the Heirs of Mrs. Gracieuse Cornen, Dec'd, Widow of Edouard Sigur, Deceased.

"Be it known that the following persons, who are the sole heirs of Mrs. Gracieuse Cornen, who lately died in the parish of St. Mary, and who was the widow of Edouard Sigur, who died in 1884 in said parish, viz., Mrs. Gracieuse Sigur, wife of Charles E. Noveret, residing in the parish of St. Mary, a daughter of said deceased, said appearer being herein authorized and assisted by her said husband; Mrs. Bertha R. Callery, wife of George P. Minvielle, residing in the parish of Iberia, herein aided and authorized by her said husband; L. Emile Callery, Joseph E. Callery, Charles Hermogene Callery, and John A. Callery, residing in the parish of St. Mary; these being granchildren of the deceased, and J. Oscar Sigur, residing in the parish of St. Mary, the grandson of said deceased, have made and entered into the following agreement, for the *purpose of settling and adjusting their interests in the estate of the said Mrs. Gracieuse Cornen, deceased, widow, as stated:*

"Said parties accept her succession as evidenced by the sale this day passed by the said Mrs. Bertha R. Minvielle, and her said brothers, to Mrs. Gracieuse Noveret, before Charles A. O'Neill, a notary public, in and for the parish of St. Mary.

111 La.—15

"*They declare that said sale disposes of all the real property of said deceased,* and whereas there was a planting partnership existing between said deceased and her daughter, Mrs. Gracieuse Noveret, which ended with the death of Mrs. Gracieuse Sigur, said deceased widow. They declare that the aforesaid sale which embraced the growing crop on the Home Plantation disposed to their satisfaction of that asset of said firm, and there being on hand the sum of —— dollars, the property of said firm, said parties declare that they have received the following sums from Charles E. Noveret, who was the agent and manager of the affairs of said firm; Mrs. Gracieuse Noveret has received the sum of two thousand two hundred and sixty-two $^{50}/_{100}$ dollars ($2,262.50); Mrs. Bertha Minvielle, L. Emile Callery, Joseph E. Callery, Charles Hermogene Callery, John A. Callery, have received the sum of two thousand two hundred and sixty-two $^{50}/_{100}$ dollars ($2,-262.50), Joseph Oscar Sigur has received the sum of two thousand two hundred and sixty-two $^{50}/_{100}$ dollars ($2,262.50); which said last sums so received exhaust the cash assets of said firm; and the said parties declare *that the said payments so made to them are a complete settlement of the affairs of said firm;* and they exonerate said agent, Charles E. Noveret, from any and all future demands by reason of said partnership.

"Said J. Oscar E. Sigur also declares that he has received from Mrs. Gracieuse Noveret the sum of one hundred and fifty dollars ($150) being *in full settlement of his interest in the furniture in the dwelling* on the Home Plantation, and that he has now no *further demands against any of the aforesaid parties,* on account of his being an heir of said deceased.

"And said parties further declare that by reason of further *payments made this day, which are satisfactory to them,* said Mrs. Gracieuse Noveret became the *sole owner of all the furniture and movables in the dwelling on said Home Plantation.*

"Said parties therefore *acquit each other mutually and fully of all demands they may have against each other* by reason of their being coheirs of said deceased.

"It is agreed that the small pieces of land acquired by the firm of Noveret and Sigur at the sheriff's sale in the suit of Bodenheimer

& Bro. vs. Christopher Toussaint is an asset of said firm, ⅔ belonging to Mrs. Gracieuse Noveret, and ⅓ to Mrs. B. R. Minvielle, and the said Callerys, and the latter agree to convey said ⅓ to Mrs. Gracieuse Noveret without further consideration than they have already received.

"[Original signed] L. E. Callery. E. J. Callery. J. A. Callery. B. R. Minvielle. I authorize my wife. Geo. P. Minvielle. J. O. Sigur. C. H. Callery. Gracieuse Noveret. I authorize my wife. C. E. Noveret.

"Witnesses: Philip H. Mentz, A. A. Bonvillain."

These various acts, of which we have italicized certain portions, were followed by the judgment of the district court of St. Mary, rendered on the 13th day of July, 1894 (already copied), placing the heirs of Mrs. Edouard Sigur in possession.

An attempt was made by the defendants to explain the circumstances under which this decree was rendered, but the evidence was, on plaintiff's objections, excluded.

The reason assigned by counsel for the taking of this action was that there still remained in the succession, after the settlement which had been made between the heirs, a claim due to it by the United States government for bounty on the crop, and the government officials required judicial evidence of the heirship of the parties to whom payment of the same should be made.

### Opinion.

Defendants' counsel insist: That the sale made by Oscar Sigur to the plaintiff, Brian, was not the ordinary sale of specific property. That it was a mere quitclaim and transfer by him of his rights as an heir of his parents and grandparents. That such a contract was aleatory, and transferred no more than the vendor had, and the question of registration did not figure in the case; the grantee taking the title of the grantor with all its modifications, equities, and estoppels. That plaintiff bought a mere hope, as the contract was aleatory. That it was simply the purchase of an inheritance. That, even had the sale been of a specific piece of property, the title would have been hampered by all the estoppels resulting from the acts of Sigur, but plaintiff really undertook to acquire a thing entirely different from an un-divided interest in the Home Place. He had Sigur transfer to him every particle of his inheritance from his parents and grandparents, of whatever it might consist. This was the sale of a hope of an interest in an estate or succession—an inheritance. The contract was aleatory, and vested in the vendee no better title than the vendor had. That upon this question of a sale by an heir, and what passes by such sale, the sale from Oscar Sigur to the plaintiff, Brian, must be distinguished from that of the children of Mrs. Clara Callery to Mrs. Noveret, and the sale of Mrs. Noveret to Bonvillain, and the donation of Mrs. Noveret to her daughter Elmire, the wife of Bonvillain. That these parties did not sell or give in their quality as heirs, nor did they transfer any of their rights as heirs. They sold a specific thing—the undivided one-third of a described piece of land—and the purchasers and donees could claim nothing but that particular object. That they could pretend to no right that the vendors or donors had in their quality as heirs. That the sale of Oscar Sigur to Brian was something quite different. Under the terms of that act, whatever rights Oscar Sigur could set up to the succession of his parents and grandparents by reason of his being their heir passed to Brian, and he could now set them up. That Oscar Sigur, save in name, is no longer their coheir. All the avails of his heirship have been transferred to Brian. Counsel contend that, as Sigur transferred to Brian the interest which he held as heir, the latter took, and could only take, what Oscar Sigur himself could take; that he had no fixed ownership in any specific piece of property, or a fixed joint ownership of one-third in the whole of the property of the succession, but only the right to take out of the property, in a partition of the same among the same, either moneys, values, or property equal to one-third; that if he had or should have received moneys equal to one-third of the value of the succession, either before his grandmother died or afterwards, he never did have a joint ownership or joint interest in the real estate; that the various acts of the 14th of May were a complete extrajudicial partition and settlement between the heirs of Mrs. Sigur, and receipts given and interchanged that day were not necessary to be recorded; that Oscar Sigur's admission

of complete receipt and settlement closed out his interest as an heir without the necessity of registration, and he could thereafter sell and convey no rights in any specific property to a third person; that the most that Oscar Sigur could do after he had made the admissions referred to, and had come under the estoppels claimed, would be to institute a suit to set aside the partition, as made in error, and have a new partition made; and that this was the only right he could confer to a third person. Referring to the question of estoppel, and the necessity of there being some evidence upon the record, so far as third parties were concerned, of the facts from which the estoppel would be made to flow, counsel insists that estoppel results from acts, and acts cannot be placed of record; and he instances as a case where latent equities are permitted by law to operate, without registry, to the prejudice of a third person, one where a vendor transfers real estate to which a third person had acquired title by the prescription of 10 years, or by that of 30. They say that in such cases prescription runs without registry, and properties are lost without registry.

The plaintiff urges as a matter of counter estoppel the action of the heirs of Mrs. Edouard Sigur in having had themselves recognized and placed in possession as heirs of Mrs. Edouard Sigur in certain proportions of her succession long after the alleged final partition among those heirs, and long after the occurrences on which defendants base their own plea of estoppel. He contends that after taking this step they were in no position to assert that Oscar Sigur had no rights, or that they had been then settled or disposed of. In dealing with this matter, it appears, as we have said, that the only real estate owned by Mrs. Sigur at her death was an undivided one-third interest in the Home Plantation, on which there was a growing crop belonging to the partnership between herself and Mr. or Mrs. Noveret; that the succession owed no debts; that it had never been placed under administration; that no separation of patrimony had been applied for; that the situation was such as to call for no adjustment of rights, by way of collation or otherwise, between the heirs. If at the time of the alleged final settlement and partition between the heirs on

May 14, 1894, Oscar Sigur had, in point of fact, received any money from the succession of his grandmother which would have lessened any interest which he might have had at that time in the succession or in the ownership of the Home Plantation, that fact does not appear by the evidence, and is only sought to be arrived at by the admissions of Oscar Sigur in the act between the heirs, which defendants rely on, that by the sale of the Callerys to Mrs. Noveret all the real estate of the succession of his grandmother had been disposed of, and he had no further claims against his coheirs. The language of the receipt is peculiar. He is made to declare that he has received from Mrs. Gracieuse Noveret the sum of $150, being in full settlement of his interest in the furniture in the dwelling on the Home Plantation, and that he has no further demands against any of the aforesaid parties on account of his being an heir of said deceased, and said parties further declare that by reason of further payments made this day, which are satisfactory to them, said Mrs. Gracieuse Noveret became the sole owner of all the furniture and movables in the dwelling on said Home Plantation.

"Said parties therefore acquit each other mutually of all demands they may have against each other by reason of their being coheirs of said deceased."

Oscar Sigur entered into no contractual relations on this occasion with his coheirs. He acquired nothing from them, nor did they acquire anything from him. He simply received some money coming to him from the succession itself, and gave acquittance for the same. He testified that any admission tending to show the contrary was made in error, and there was no attempt to show the contrary and controvert his testimony. He certainly, so far as the record discloses, made no transfer of property to any of his coheirs. Their interests in the plantation were never enlarged by any conveyance from him. The crop on the Home Plantation is shown to have been divided between the heirs of Mrs. Edouard Sigur, each of the coheirs getting his or her legal share of that particular asset (Civ. Code, art. 1295), but there is nothing to show any partition of the Home Plantation among the coheirs. All that the record shows in respect to that property is a

transfer by sale by the Callerys (heirs by representation of Clara Sigur, a predeceased daughter of Mrs. Edouard Sigur), who held an interest of five undivided eighteenths in the plantation of Mrs. Noveret, a coheir of one-third of the plantation, and a subsequent disposal of the entire plantation by Mrs. Noveret to her son-in-law Bonvillain, and to her daughter Elmire, wife of Bonvillain, an undivided half to Bonvillain by act of sale, and an undivided half to his wife by an act of donation. The ownership of the entire undivided third of the Home Plantation, which belonged to Mrs. Edouard Sigur at the time of her death, devolved upon her heirs, one-third of that third to her daughter Gracieuse (Mrs. Noveret), one-third of that third to the representatives of her predeceased daughter Clara (Mrs. Callery), and one-third of that third to Oscar Sigur, the representative of her predeceased son Hermogene.

In the sale of the one half of the plantation and the donation of the other half to her daughter Elmire, Mrs. Noveret, was included the one undivided ninth (or two-eighteenths) of the entire property which Oscar Sigur had inherited from his grandmother Mrs. Edouard Sigur. There has been no attempt to show that that interest of Oscar Sigur in that property passed out of him over to either the Callerys or to Mrs. Noveret, or how or why it did so. In the original opinion reviewing the situation at the time of these two acts, we said that, in undertaking to dispose of the entire plantation, Mrs. Noveret had disposed to the extent of two-eighteenths (or one-ninth) of a greater interest than she really owned, one of these eighteenths having been evidently derived through the sale to her by the Callerys, who did not own the same at the time of the sale, and the other eighteenth held by her under no title whatever, so far as the record shows.

These two-eighteenths (or one-ninth) were evidently the interest, in reality, of Oscar Sigur in the property.

The Callerys held as heirs only an interest, in reality, of five undivided eighteenths in the Home Plantation. They could legally sell no greater interest therein. The additional eighteenth which they undertook to dispose of did not belong to them, but to Oscar Sigur, and, under article —— of the Code, the sale was a nullity. Were there

any estoppel at all in this case, it could be only urged by the minors, and limited to this particular eighteenth which Mrs. Noveret bought and paid for from the Callerys, without protest. as she says, from Oscar Sigur at the time she purchased. The other of the two-eighteenths which she disposed of was a portion of the interest of Oscar Sigur in the plantation, which had simply illegally been detained by her without consideration whatever. We do not see how Mrs. Noveret was injuriously affected in respect to this eighteenth by any act of Sigur in the premises. If this eighteenth really belongs to Oscar Sigur or his vendee, we do not see any legal basis for an estoppel against their demanding it judicially. Mrs. Noveret's position as to this interest had been in no manner altered by any act of Sigur. Neither Mrs. Noveret nor her donee could expect to hold property actually Sigur's under a claim of estoppel. That is a plea to be urged in aid of equity, and not against it. Counsel presses the plea without any equities back of it, as matters are now presented. Even between the parties there is no ground for an estoppel as to this interest. Securities v. Talbert, 49 La. Ann. 1402, 22 South. 762; Imhof v. Imhof, 45 La. Ann. 706, 13 South. 90; Board of Trustees v. Campbell, 48 La. Ann. 1543, 21 South. 184.

The donee of Mrs. Noveret occupies the same position which she herself occupied on that subject. She stands in her shoes.

The position of Mrs. Noveret touching the eighteenth she acquired from the Callerys: That interest she acquired for value. She was herself, however, as were her vendors, an heir of Mr. Edouard Sigur, and must have known of the rights of Oscar Sigur in the real estate she was purchasing, and of the situation of the succession of her mother. She must have known that Sigur's interest could only have passed out of him by means of a transfer of some kind—some writing by which he had divested himself of his rights therein. She entered into the contract of sale with the Callerys with no such writing existing or (of course) recorded. The parties contented themselves with having Sigur sign the act as a witness. Whether this was accidental, or for the purpose of working an estoppel, we do not know. Mrs. Noveret was not made a party to this suit. We do not

BRIAN v. BONVILLAIN.

think the necessities of this case call for a decision of the question of estoppel at this time from its standpoint as between Sigur and Mrs. Noveret.

We direct our attention to the position which plaintiff occupies in reference to the Home Plantation. When he made his purchase from Oscar Sigur, he found that the district court for St. Mary parish had as late as the 15th of July, 1894, on the application of all the heirs of Mrs. Edouard Sigur, recognized them as such, and placed them in possession of the succession in its entirety. He also knew that, independently of this, Oscar Sigur, as one of the heirs of Mrs. Sigur, had inherited one-third of her estate. Titles by descent do not require to be registered (Guillotte's Heirs v. Lafayette, 5 La. Ann. 382), and parties may have recourse to unrecorded judicial proceedings for information. Plaintiff had the right to assume that Oscar Sigur held at the time of his conveyance an undivided third interest in the Home Plantation as an heir of his grandmother. This interest, being in an immovable, could pass out of Sigur only by some written evidence showing a divestiture of title; and, so far as the public was concerned, this divestiture of title should have been shown by the public records. There was no evidence of such divestiture shown, and plaintiff was entitled to buy the interest. He was not estopped from doing so by any latent or any unknown equities existing between his vendor and his coheirs. If Mrs. Noveret was not the owner of Sigur's interest in the plantation at the time of the sale to Bonvillain and of the donation to her daughter, she certainly could not dispose of it to other parties. Assuming it to be true that Sigur had in some manner received, after the death of his grandmother, money or property of the succession as an heir, with which his coheirs would be entitled to charge him, we do not think that fact would carry with it, as a legal result, a proportional enlargement of the extent of the legal title which his coheirs held in the Home Plantation. Had this amount exactly equaled the entire share which Sigur would have been entitled to receive, title to that property would not have passed in its entirety to the Callerys and Mrs. Noveret, nor could they dispose of it from that standpoint. The legal title would have remained as it was (Succession of Hautau, 32 La. Ann. 57; Zeigler v. His Creditors, 49 La. Ann. 176, 21 South. 666), cast upon the heirs. It would not follow, however, that Sigur would hold his interest or title free from any claims on the part of his coheirs upon or in respect to it. Sibley v. Fernie, 22 La. Ann. 165. The right of Sigur to sell this interest to plaintiff, and the right of the latter to purchase it free from any estoppel so far as plaintiff was concerned, is something other and different from what was or would be the extent of the rights acquired by the vendee through his purchase. The interest of each heir in immovable property inherited under the circumstances shown in this case is one of joint ownership, but joint ownership under the special tenure of heirship. It is not an absolute, but an imperfect, ownership, as was held in Bank v. David, 49 La. Ann. 136, 21 South. 174.

It does not give the heir the right to enjoy, to use, and to dispose of it in the most unlimited manner, but only the right of enjoying and disposing of it when it can be done without injuring the rights of others; that is, of those who may have real or other rights upon it. Civ. Code, arts. 491, 492.

We do not think this a proper occasion on which to determine whether there be any such outstanding rights, and what they may be. All we think ourselves called upon or authorized to decide at the present time is to recognize and decree that the plaintiff is the owner of all the right, title, and interest of Oscar Sigur as heir of his grandmother Mrs. Gracieuse Cornen, widow of Edouard Sigur, to the extent of an undivided ninth, in the property described in the judgment appealed from, and to authorize him to proceed to the ascertainment and enforcement of his said right by judicial partition made contradictorily with the parties in interest. The defendants have been in possession of this property for a number of years, not as joint owners with plaintiff, but separately in their own right, and have placed thereupon valuable permanent improvements; and, the ultimate rights of parties being not as yet ascertained, it would be impossible at this time to decree that plaintiff be placed in possession of the property, or to pass upon the rights and obligations of parties as to fruits, rents, and improvements. A joint

owner may acquire as against another a right of actual temporary possession of the entire property. These matters are left open to be passed upon in due course of time in the partition proceedings herein authorized to be taken.

For the reasons assigned herein, it is ordered, adjudged, and decreed that the plaintiff be, and he is hereby, recognized and decreed to be the owner of all the right, title, and interest of Oscar Sigur as heir of his grandmother, to the extent of one undivided ninth, in the property described in the judgment appealed from; and he is authorized to proceed to the ascertainment and enforcement of said rights by judicial proceedings taken contradictorily with the parties in interest. It is further ordered, adjudged, and decreed that the rights of the parties as to fruits, revenues, and improvements, and similar demands, be left open, to be liquidated and settled in said partition, and that until said liquidation and settlement the defendants remain in actual possession. It is further adjudged and decreed that the judgment appealed from, in so far as it may differ from the present judgment, is altered and amended. It is further ordered and adjudged that the cause be remanded to the district court, to be there proceeded with by further proceeding according to law and the views herein expressed, with the right of parties to amend their pleadings.

BREAUX, J., recuses himself, having been of counsel for the Callery heirs.

## On Rehearing.

### (Jan. 4, 1904.)

LAND, J. The pleadings and facts in this case have been so fully and clearly stated in the two opinions heretofore handed down that repetition would be useless.

In the last opinion the court reached the conclusion that J. Oscar Sigur, as heir of his grandmother, was entitled to one undivided third of her estate; that his interest as heir in the property in dispute had been acquired by plaintiff, a bona fidé purchaser; and that the title of Sigur in this property had not been divested by the estoppel pleaded by defendants.

The decree, however, relegated the plaintiff to an action of partition, in which the rights of the parties as to fruits, revenues, improvements, and similar demands are to be liquidated and settled, and, until this was done, maintained the defendants in actual possession.

The decree further remanded the cause to the district court, to be there proceeded with by further proceedings according to law and the views expressed in the opinion, with the right of parties to amend their pleadings.

A rehearing was granted, and the case was argued and submitted on additional briefs.

In considering this case, it is well to restate the issues raised by the pleadings in the court below. The action is petitory, plaintiff claiming title from J. Oscar Sigur. The answer admits that Sigur once had title by virtue of his heirship, but avers that by reason of the facts set up in the answer the said Sigur was estopped to claim any part of the real estate sued for, had no such claim, and could and did pass none to the plaintiff in the suit. The answer further avers that by the act of settlement of May 14, 1894, the coheirs "acquitted each other mutually and fully of all demands they had against each other by reason of their being coheirs of said Mrs. Gracieuse Cornen, deceased."

By agreement of counsel the question of rents, improvements, and taxes was deferred for future litigation.

Judgment was rendered in favor of plaintiff for an undivided ninth interest in the lands sued for, together with a like interest in the buildings, improvements, and immovables by destination thereon, and it was further decreed that plaintiff be placed in possession of said interest as owner.

The answer does not suggest or intimate that Sigur owed collations to his coheirs, or that his interest as heir in the real estate was less than one-ninth.

On the contrary, the answer sets up a full settlement of the demands of the coheirs against each other, and pleads that defendant acquired the third interest of Sigur by estoppel.

The judgment of July 13, 1894, recognized Sigur as entitled to one-third of the estate, and to the possession of his proportion of the entire estate, "of whatever the said estate may consist."

The question raised by the pleadings is one purely of title, with the onus on defendants to prove that the title of Sigur was divested by estoppel as alleged.

His title came from the same source as the title conveyed by Mrs. Noveret to defendants.

The decision hinges on the sole question of estoppel, and on the further question whether an estoppel not of record can affect a bona fide purchaser.

We are of opinion that there was no estoppel against J. Oscar Sigur, because the transactions of May 14, 1894, cannot be explained on any other hypothesis than ignorance on the part of Sigur, Mrs. Noveret, and the defendants as to Sigur's interest in the Home Place. Sigur inherited one sixth interest in this plantation from his grandfather. In 1884 his grandmother donated to him an additional sixth interest, "not subject to any future collation," but for the purposes of settlement among the heirs of the estate.

Sigur subsequently conveyed his third interest thus acquired to Mrs. Noveret. On the death of his grandmother, Sigur inherited one-third of her interest in the property.

Yet, strange as it may appear, J. Oscar Sigur was ignored as an heir to the real estate belonging to the succession of his grandmother, but was recognized as an heir to the personal property.

Bonvillain, in his testimony on the first trial, admits that he knew that Mrs. Sigur owned an interest in the Home Place, and knew that she had three heirs, but in explanation said: "I don't know exactly when the transfer was made, but Mr. C. E. Noveret told me that Mr. Oscar Sigur transferred his one-third interest in the Home Plantation to Mrs. Noveret for her one-third interest in the Richland Plantation, and this was done before Mrs. Gracieuse Sigur, widow of Edouard Sigur, died."

To other questions as to his knowledge of the interest of Sigur in the property, the same witness answered: "Well, his interest was settled. I know that his interest had been settled, because they told me."

Sigur, in his testimony, stated: "I was then under the impression that I had traded my interest in the Home Plantation to Mrs. Noveret."

The attorney who drew up the acts received his information from Mr. Noveret, and did not know what interest J. Oscar Sigur had in the property. As to what passed at the meeting the attorney said: "I am absolutely certain that no representations were made then by one person to another. All seemed to understand the thing exactly alike."

The error as to the title was common to all the parties. The facts were known to all, and the error was one of law. Mr. and Mrs. Noveret, their daughter, and son-in-law assumed that J. Oscar Sigur did not own any interest in the Home Place. They were not deceived or misled by any act or declaration on the part of Sigur. It was their own mistake.

A false representation or concealment of material facts is an essential element of estoppel. The party relying on the representation must have been ignorant of the facts, and must have been induced to act upon the representation or concealment. Amer. & Eng. Ency. Law (1st Ed.) p. 12 et seq.

The recitals in the act of settlement have been discussed in the last opinion rendered. So far as they refer to the deed from the Callery heirs, the deed speaks for itself.

There was no partition of the real estate, and the vague recitals in the act of partition of the personal property work no estoppel.

General recitals do not estop the parties from disputing the statements made in them. 7 Am. & Eng. Ency. Law, p. 8.

Being of opinion that the plea of estoppel is not good against Sigur, it is not necessary to consider whether such a plea is available against plaintiff, a bona fide purchaser.

The question is purely one of title, and the effect of a judgment in plaintiff's favor will be to make him joint owner of the property with the defendants, who derive title from the heirs of the same intestate. The defendants, in their answer, do not question that Sigur, as heir, was entitled to one-ninth interest in the property in controversy; and, under the pleadings, the court is not called upon to consider any question of partition or collation, even if such question could be raised after the heirs had parted with their interests in the property.

It is therefore ordered that our former decree rendered in this case be set aside, and it is now ordered and decreed that the judgment of the district court be affirmed; appellants to pay costs of appeal.

BREAUX, J., recuses himself, having been of counsel for the Callery heirs in matter of the settlement of the succession of their grandfather Sigur. °

See concurring opinion of PROVOSTY, J., 35 South. 640.