(58 South. 160.)

No. 18,987.

BREWER v. WRIGHT.

(March 25, 1912.)

*(Syllabus by the Court.)*

1. EXECUTORS AND ADMINISTRATORS (§§ 384, 386, 388*) — ESTOPPEL (§ 98*) — SALE OF REAL ESTATE — RECORD — NOTICE TO SUBSEQUENT PURCHASERS—TITLES BY ESTOPPEL.

    Titles by descent need not be recorded; and third persons are put on inquiry as to the nature and extent of such titles. Where A. devised certain real estate to B., the property cannot be sold in the succession of A. Where such property was sold in the succession of B., the title of B.'s heirs was divested, and they had no rights in the property to convey to a third person. A succession sale of property, made and recorded in the parish of Orleans, and embracing real estate in the parish of Jefferson, became effective as to such property as soon as it was annexed to the parish of Orleans, and operated as notice to subsequent purchasers. Titles by estoppel, not of record, have no effect, except between the parties.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1569, 1570, 1573–1582; Dec. Dig. §§ 384, 386, 388;* Estoppel, Cent. Dig. § 290; Dec. Dig. § 98.*]

2. HUSBAND AND WIFE (§ 276*) — COMMON PROPERTY—ADJUDICATION TO SURVIVOR.

    The failure to record in the mortgage book a judgment of adjudication of common property to a surviving parent is cured by the substitution of a special mortgage, as provided by C. C. art. 344.

    [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1032–1045; Dec. Dig. § 276.*]

Provosty, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by Annie E. Brewer against Willis B. Wright. Judgment for plaintiff, and defendant appeals. Amended and affirmed.

Hall,. Monroe & Lemann, for appellant. Chas. F. Claiborne, for appellee.

LAND, J. This is a petitory action to recover a certain square of ground in the city of New Orleans, designated by the number 158. Plaintiff and defendant trace their titles to Henry Parish, who died about the year 1857, leaving a last will and testament, by which said square was devised to Henry Parish Conery, who died about the year 1859. The succession of Henry Parish Conery was opened in the city of New Orleans, and in June, 1860, the square was sold in due course of administration to George Brewer, from whom, by mesne conveyances, the plaintiff derives her title. Henry Parish Conery left as his sole heirs his father and mother, Mr. and Mrs. Peter Conery, who,

in February, 1867, sold to Daniel Parish their rights in real estate, not described, by act of sale duly recorded in the parish of Jefferson in June, 1867. It appears that Daniel Parish was executor of the last will and testament of Henry Parish, of the state of New York, which was duly probated in said state in December, 1857, and which was subsequently ordered registered and executed in April, 1868, in the Second district court of the parish of Orleans, at the instance of Daniel Parish, executor, who, in 1871, caused said square to be inventoried and sold as the property of the succession of Henry Parish. The square was adjudicated to Matthew Ward, from whom, through mesne conveyances, the defendant derives his title.

The square of ground was situated in the parish of Jefferson until 1870, when it was annexed to the city of New Orleans, by Act No. 7 of the extra session of that year, as part of the Sixth municipal district.

The deed from Mr. and Mrs. Peter Conery, executed and recorded in 1867, both in the parishes of Jefferson and of New Orleans, showed on its face the origin of their title, to wit, by inheritance from Henry Parish Conery. The deed did not describe the square in dispute, other than as undivided real estate in the parish of Jefferson belonging to the late firm of Gasquet, Parish & Co. As a matter of fact, the square in dispute had been sold in 1860 in the succession of Henry Parish Conery by deed duly recorded in the parish of Orleans. In 1871, after the said square had been annexed to the city of New Orleans, Daniel Parish, repudiating the purchase of 1867, and ignoring the devise of the property to Henry Parish Conery, caused the square to be inventoried and sold as belonging to the succession of Henry Parish. When this sale was made, the records of the parish of Orleans, in which the square was then situated, showed that the property belonged to George Brewer by purchase, made in 1860, from the succession of Henry Parish Conery. The title of Henry Parish was never recorded in the parish of Jefferson, but resulted from a judgment, rendered in a partition suit in the Fourth district court of the city of New Orleans in November, 1848. It follows that the records of the parish of Jefferson disclosed no title in Henry Parish, and no information as to the titles to said square, beyond the recitals in the deed from Peter Conery and Anna M. Conery to Daniel Parish, executed in 1867, which showed that the vendors, as heirs of Henry Parish Conery, devisee of Henry Parish, conveyed to the vendee an undivided interest in real estate, not described, in the parish of Jefferson, and some 3,000 acres of land, not described, in the parish of Ouachita. The deed to Daniel Parish showed on its face that he had purchased the right, title, and interest of the heirs of Henry Parish Conery in and to certain vaguely described real estate situated in the parish of Jefferson. The title of the vendors of Daniel Parish being by descent required no recordation, and third persons were bound to make inquiry as to the existence and extent of such title. Guillotte v. City, 5 La. Ann. 389; Brian v. Bonvillain, 111 La. 457, 35 South. 632. The purchaser, in 1871, was further put on inquiry by the fact that the square in question was offered for sale as the property of the succession of Henry Parish, at the instance of Daniel Parish, executor. The purchaser was, moreover, bound to take notice of the title by descent acquired by Henry Parish Conery from Henry Parish. Proper inquiry would have disclosed the fact that the square had been sold in 1860 in the succession of Henry Parish Conery, the true owner. This sale destroyed whatever right, title, or interest the heirs of the decedent might have had in the property.

In Brewer v. Yazoo & M. V. R. R. Co., 128 La. 544, 54 South. 987, this court held that

the sale of another square of ground, made in the succession of Henry Parish under similar conditions, was an absolute nullity.

[1] The title of Brewer was recorded in the city of New Orleans; and the registry became effective on the square in question as soon as it became annexed to the municipality. The sale in the succession of Henry Parish was made one year later. Matthew Ward bought from the succession of Henry Parish, and not from Daniel Parish. It may be that Daniel Parish might have been estopped to deny that the square belonged to the succession of Henry Parish; but we cannot understand how such an estoppel, not of record, can operate as a conveyance from Daniel Parish to Ward, as against third persons.

Plaintiff has the same chain of title to squares 150 and 158; and it has been adjudicated that plaintiff has a legal title to square 150. See Brewer v. Yazoo & M. V. R. Co., 128 La. 544, 54 South. 987. Both of said squares were purchased by George Brewer at a public sale made in the succession of Henry Parish Conery in the year 1860. At the date of this purchase, George Brewer was married to his first wife, and the squares fell into the community existing between them. Mary Ann Brewer, the wife, died in the year 1873, leaving two major and five minor children of the marriage. The succession of the deceased wife was duly opened in the Second district court for the parish of Orleans, and George Brewer was duly confirmed as natural tutor of his minor children. George Brewer, in May, 1873, presented a petition to the court, representing that the community was largely in debt, and it was to the interest of the minors to have all of its properties adjudicated to the petitioner as surviving spouse, and that the same was assented to by the major heirs as to their shares and interests. Upon the advice of a family meeting, duly convoked

and homologated, the adjudication was made as prayed for by the natural tutor. But this judgment of adjudication was never *recorded* in the mortgage book of the parish. In June, 1873, Brewer, tutor, filed an account of his administration of the succession of his wife, showing that the community was insolvent, and that a balance of $779.20 was due and owing by the succession. This account was duly homologated, and on the petition of the tutor the court ordered that the half interest of the succession in a certain lot be sold to pay debts. The lot appears to have been sold; but David Snow Brewer, one of the major heirs, refused to sign the act of sale. Being ruled into court, said heir answered that he had never consented to the adjudication of the property as alleged in the petition of the tutor, and that the property could not be legally sold, unless the succession was regularly administered. Thereupon George Hamilton Brewer, the other major heir, who had acted as undertutor, was duly appointed administrator, and procured an order of court for the sale of the same property to pay the debts of the succession. In 1874 the legal mortgage of the minors was released by the substitution of a special mortgage, duly recorded, on squares 150 and 158. In 1875 George Hamilton Brewer, administrator, filed his account, showing that nothing remained after the payment of debts. In December, 1875, George Brewer was adjudged a bankrupt, and in November, 1876, the plaintiff purchased the two squares at a public sale, ordered and confirmed by the court having jurisdiction of the bankruptcy.

The defendant makes the following objections to plaintiff's title:

(1) That the adjudication of the community property to George Brewer in 1873 was a nullity, because the judgment of adjudication was not recorded in the mortgage book of the parish, as required by law.

(2) That the interest of the two major heirs in the community property never passed to George Brewer.

Article 343 of the Civil Code of 1870 provides that, where the father or mother of a minor has property in common with him, they can cause it to be adjudicated to them, and that the property so adjudicated shall remain specially mortgaged for the security of the price of adjudication and the interest thereon. Article 344 of the same Code reads as follows:

"In case of an adjudication made under the preceding article or any other law authorizing similar adjudications, a special mortgage may be given by the father or mother on immovable property to secure the rights of the minors, and said special mortgage shall have the effect of annulling the mortgage arising from such adjudication."

Section 2363 of the Revised Statutes of 1870 provides that, where mortgageable property has been adjudicated to either parent of the minor, the act of adjudication shall be recorded in the book of mortgages of the parish in which the property is situated; and it shall operate a mortgage and vendor's privilege; "and no such adjudication shall have any legal or binding effect until such record is made."

In Succession of Burguieres, 104 La. 51, 28 South. 885, the court said:

"Not only must there be a decree of adjudication, but this decree or act of adjudication must be registered as R. S. § 2363 directs. Else there is no divestiture of the title of the minors."

In the same case, the court further said:

"What was done in 1895, looking to the substitution of a special mortgage in lieu of the general mortgage, did not have the effect of curing the antecedent neglect of formal adjudication of the minors' interest in the property to their father."

[2] In the case at bar, there was a formal adjudication of the property, and the special mortgage had the effect of annulling the mortgage arising from the adjudication. If the adjudication had been properly recorded, the result would have been the same. As to the major heirs of Mrs. Brewer, one of them was the undertutor and participated in the proceedings; and the alleged assent of both may be presumed after the lapse of 30 years.

It is therefore ordered that the judgment below be amended by decreeing the plaintiff to be the owner of the square sued for, and, as thus amended, be affirmed; cost of appeal to be paid by defendant.

PROVOSTY, J., dissents.