Hon. J. G. Taliaferro,  
Hon. R. K. Howell,  
Hon. W. G. Wyly,  
Hon. P. H. Morgan. } *Associate Justices.*

---

### No. 4584.

Mary C. Winter and Husband *v.* H. Tounoir, Public Administrator, and New York Warehouse and Security Company.

25 611  
f104 51

Act No. 95, approved March 8, 1869, was passed, as its title announces, to carry into effect article 123 of the State constitution of 1868. The judgment which, in this instance, is the act of adjudication, stipulating the amount of the property held in common with a minor and adjudicated to her mother, was duly recorded in the book of mortgages, and was a compliance with the said law.

The prescription of ten years set up by defendants does not apply to said judgment of adjudication. The judgment is not and was never intended by the law to be a judgment for money against the natural tutrix, upon which execution could issue in favor of the minor,

The amount, however, of plaintiff's claim, so far as secured by mortgage, must be reduced. as it is shown that a portion of it was for the price of slaves adjudicated with lands. It was a sale, the price of which is still unpaid. The question has already been settled by this court, and is now jurisprudence.

APPEAL from the Seventh Judicial District Court, parish of Pointe Coupee. *Butler*, J. *Farrar & Montgomery*, for plaintiff and appellant. *Edward Phillips*, for defendants and appellees.

Howell, J. This is a suit to enforce a minor's rights of mortgage upon property in the hands of a third person.

John C. Clark, the father of plaintiff, died in 1853, leaving a widow, her mother, two minor children, and a considerable estate, all commu-

nity property. One of the children died soon after, and on twenty-eighth March, 1855, judgment was rendered and signed, adjudicating all the property to the widow at the appraised value, which judgment was recorded on twenty-second June, 1868.

On first February, 1859, the widow sold the land to one Mrs. Stirling, who assumed to pay the amount due the minor at her majority, to the extent of $20,000, with six per cent. interest, and stated to be "secured by the tacit mortgage, accorded by law." This act of sale was not recorded until the eighteenth June, 1866, when it seems to have been recorded in the book of mortgages, and was reinscribed on eleventh December, 1869.

On the twentieth May, 1859, the widow filed an account, showing the sum due the minor to be $9688 95, and on the ninth of June, of that year, this account was homologated, and the judgment signed. This judgment is not recorded.

On the nineteenth January, 1866, prior to the recording of the act of sale from Mrs. Clark to Mrs. Sterling, the latter mortgaged the said land to one R. B. Hill, who transferred the mortgage notes to the New York Warehouse and Security Company, one of these defendants. In this act, which was recorded on seventh February, 1866, is a recital of the minor's mortgage, as existing, for $12,489 59, with six per cent. interest from February 1, 1859, as fixed by judgment, and payable at the majority of the minor, then about fifteen years old.

After this, to wit, on eighteenth June, 1866, as above stated, the act of sale from Widow Clark to Mrs. Sterling, of first February, 1859, was recorded in the mortgage book, and reinscribed December 11, 1869. On twenty-fifth April, 1868, the said land was sold at Marshal's sale, under foreclosure of the Hill mortgage, and purchased by the New York Warehouse and Security Company, holder of the notes, the mortgage certificate furnished at the time, reciting the minor's mortgage, as existing, for $20,000, and by special instruction it was not erased upon recording the purchaser's title. On the twenty-second June, following (1868), the judgment of twenty-eighth March, 1855, homologating the adjudication of the community property to the widow was recorded, as already stated. And on the sixteenth October, 1869, an extract of the inventory of Mrs. Clark, deceased, made on the twenty-seventh April, 1861, was recorded.

The principal question presented is, has the minor's mortgage been preserved?

She relies on the recording of the judgment of adjudication, the abstract of inventory of Mrs. Clark's succession, and act of sale from Mrs. Clark to Mrs. Sterling, showing an acknowledgment of $20,000 due the minor and secured by mortgage.

Section six of act No. 95 of 1869, approved March 8 (session acts, p.

115), provides: " That when mortgageable property has been adjudicated to either parent of the minor, the act of adjudication shall be recorded in the book of mortgages in the parish in which the property is situated, and it shall operate a mortgage and vendor's privilege ; the amount of the value of the property, as stipulated in the act, shall operate a mortgage against such property in favor of the minor; and no such adjudication shall have any legal or binding effect until such record is made."

This statute was passed, as its title announces, to carry into effect article 123 of the constitution of 1868, which made it the duty of the Legislature to provide by law for the registration and preservation of tacit mortgages then existing in favor of minors and others, as well as any subsequently arising or created. The judgment, which, in this instance, is the act of adjudication, stipulating the amount of the property held in common with the minor and adjudicated to the mother, was duly recorded in the book of mortgages, and was, we think, a compliance with the said law.

There can be no question that the mortgage existed up to January, 1870, in favor of the said minor, under the laws and jurisprudence when in force, and it was only a question of preservation or perpetuation, as contemplated by the constitution, prior to the first day of January, 1870. We must think that it was preserved and perpetuated by the compliance with the above law as stated. What the law directed to be done in such a case, was done, and the rights of the minor in this respect were protected.

The prescription of ten years, set up by defendants, does not apply to this judgment of adjudication. The judgment is not, and was never intended by the law to be a judgment for money against the natural tutrix upon which execution could issue in favor of the minor. Nor is the claim of the plaintiff prescribed. The amount, however, so far as secured by mortgage, must be reduced, as it is shown that a portion of it was for the price of slaves adjudicated with the land. It was a sale, the price of which is still unpaid.

This question has already been settled by this Court, and is now jurisprudence. See 21 An. 537, 643, 661.

The proportion of the slave to other property was as thirty-five is to thirty-two—a fraction more than one-half. The amount due the minor on twentieth May, 1859, was $9688 95. The proportion we ascertain to be enforceable is $4420 with five per cent. interest from said date, and for which the plaintiff should have the right of mortgage upon the property described in her petition, this being the only matter brought up by this appeal, the plaintiffs having appealed from the judgment in favor of the New York Warehouse and Security Company.

It is therefore ordered that the judgment appealed from be reversed, and it is now ordered that the plaintiff, Mary Clark,. wife of William S. Winter, be decreed to have a legal mortgage on the following described tracts of land acquired by the New York Warehouse and Security Company at judicial sale on twenty-fifth April, 1868, and now in their possession, to wit: All of lots number forty-nine and fifty, and so much of lots number fifty-one, fifty-two and fifty-three as lies south of a line drawn from the front corner of lots fifty-three and fifty-four to the rear corner of lots fifty and fifty-one; also so much of section seventy-six as is found south of the east and west dividing line of the same, west of the south-east eighty-acre lot and north of a line running due east from the back corner of lots forty-eight and forty-nine, all in township four, of range eight east, in the Southeastern Land District, in the parish of Pointe Coupee—the whole tract above described containing in all six hundred and twelve acres more or less. And also the following described tracts of land on the west bank of Bayou Fordoche, purchased by J. C. Clark from James K. Harris, viz: lots or sections eighteen, twenty and twenty-one in township four, range eight east, containing 1138.85 acres, situated on Bayou Fordoche, in said parish, and that the same may be ordered to be seized and sold to pay and satisfy the above sum and interest, with costs in both courts.

WYLY, J., *dissenting.* In 1853, John C. Clark, the father of the plaintiff, died in the parish of Pointe Coupee, leaving a surviving widow and community property consisting of a plantation and slaves inventoried at $67,113 25. In 1855, this community property was adjudicated to Mrs. Clark, the mother of the plaintiff, according to the provisions of article 338 of the Code of 1825.

In 1859, Mrs. Clark sold the plantation to Mrs. Mary C. Sterling, who subsequently mortgaged it for $75,000 to Richard B. Hill. This mortgage was subsequently transferred to the defendant, the New York Warehouse and Security Company, who purchased the plantation under the foreclosure of said mortgage.

In May, 1859, Mrs. Clark filed her final account, showing that $9683 95 were due the plaintiff, her minor daughter, after paying all the debts of the community.

The plaintiff, Mary Clark, having been emancipated by marriage, brought this suit against H. Tournoir, the legal representative of the succession of her mother, and against the New York Warehouse and Security Company, to recover judgment for the amount due her from the succession of her father, and to enforce her mortgage on the plantation held by the New York Warehouse and Security Company.

The court gave judgment as prayed for against the legal representa-

tive of the succession of the mother of the plaintiff, but refused to recognize and enforce the tacit mortgage on the plantation.  From this part of the judgment plaintiff appeals.

I think the registry of the act of adjudication of the community property pursuant to article 338 Civil Code, prior to the first of January, 1870, was a sufficient compliance with the registry laws and the Constitution of 1868; and that it continued in force the mortgage of the plaintiff against her mother, her tutrix, to secure the sum due her resulting from said adjudication.

But the defendant, the New York Warehouse and Security Company, the present owners of the plantation affected by this tacit mortgage, contends that, as the common property adjudicated to the mother of the plaintiff was land and slaves, the court can not enforce the claim of the plaintiff without enforcing a debt in part for slaves, in contravention of the jurisprudence of this State, which requires debts of this character to be reduced to the extent of the consideration thereof not for slaves.  I think this is an objection that this defendant can not set up; because the bases of plaintiffs' demand are the judgment adjudicating the common property in 1855, and the judgment homologating her mother's final account of administration in May, 1859, which judgments existed prior to the mortgage debt, under which the defendant, the New York Warehouse and Security Company, acquired the property.

It is well settled that a creditor whose claim arises subsequent to the rendition of a judgment can not demand its nullity for want of consideration of the debt on which it was based, or for any other cause.

It is only creditors whose claims existed at the time of the rendition of the judgment, or who had an adverse interest, that could be injured by it; therefore they only can demand its nullity.

When these judgments were rendered, upon which plaintiff's action is based, the New York Warehouse and Security Company had no adverse claim whatever, because the mortgage debt under which they bought the property was not then in existence.

In the case of Silliman it was held that the objection to the slave consideration of the debt upon which a judgment is based, can not be raised by one whose claim arose subsequent to the rendition of said judgment.

The judgment in this case, as against the legal representative of the succession of the mother of the plaintiff, can not be disturbed, because no appeal has been taken therefrom.

The judgment adjudicating the common property, pursuant to article 338 C. C., is not a money judgment in the meaning of section 2831 of the Revised Statutes of 1870, nor is the judgment homologating the account filed by the mother of the plaintiff; therefore the prescription

of ten years, pleaded in bar thereof, is inapplicable. Wade *v.* Caspari, 24 An. 211, is cited as authority to the contrary, but an examination of that case will show that it is not like the one before us.

There, the court applied prescription to a money judgment obtained by a tutor against his predecessor, who had been removed. Here, the tutrix causes the common property to be syndicated to her, pursuant to article 338 C. C., and she procures the homologation of her final account as administratrix. There was no money in these judgments that the tutrix was then called upon to surrender; on the contrary, it was her duty to retain it until the termination of the tutorship. These judgments were clearly not prescriptible.

I, therefore, dissent from that part of the decision of the majority of the court reducing the claim of the plaintiff on account of the slave consideration of part of the debt.

Rehearing refused.