145 So. 259·

## PECASTAING v. GLOBE INDEMNITY CO.
### et al.
### No. 31991.

Nov. 28, 1932.

Rehearing Denied Jan. 3, 1933.

Monroe & Lemann, of New Orleans, and Theus, Grisham, Davis & Leigh, of Monroe, for appellant.

Joseph S. Guerriero, of Monroe, and Leslie Moses, of New Orleans, for appellee.

ST. PAUL, J.

This is an action by a dative tutor on behalf of his minors, against their father and the surety on the bond he gave as their natural tutor and to secure the price for which his minor children's property was adjudicated to him as parent holding the property in common with them. Act No. 223 of 1920; Act No. 68 of 1924; Act No. 283 of 1926; Act No. 106 of 1924.

There was judgment below for plaintiff as prayed for; and the surety appeals.

**I**

Mrs. Annie Norman Pecastaing died intestate December 18, 1928, leaving four minor children born of her marriage with Cyrille Pecastaing. At her death she left one piece of separate property, which is not involved here, and her interest in the community of acquêts and gains which had existed between her and her husband.

That community owned the following seven pieces of real estate in the city of Monroe, to wit:

(1) Lot on South Fifth street, near Layton avenue, having 100 feet front and 110 in depth.

(2) Another lot on South Fifth street, near Layton avenue, having 50 feet front and 110 in depth.

(3) Lot on South Fifth street, at the corner of Layton avenue, having 50 feet front and 143 in depth on said avenue.

(4) Lot on Dick Taylor street, having 30 feet front and 146 in depth.

(5) Lot on South Third street, at the corner of Stone avenue, having 50 feet front and 150 in depth on said avenue.

(6) Lot on Layton avenue near South Fifth street, having 40 feet front and 150 in depth.

(7) Lot on Stone avenue, near Fifth street, having 35 feet front and 100 in depth.

Of course these descriptions mean nothing here; but Monroe is the parish seat of Ouachita parish, where the trial judge holds his court, and thus there is a common-sense reason as well as a legal one for attaching much weight to his appreciation of the values of these properties.

## II

■ The uncontradicted *oral* testimony is, that in 1928 *six* of these seven pieces of real estate were alone worth more than $44,000. They were then mortgaged for $22,500; and were further encumbered with $1,923.48 in paving liens and a judgment for $548.10; all aggregating $24,971.38.

The official appraisers, on whose estimation the children's share in the properties was adjudicated to their father (under the provisions of Rev. Civ. Code, art. 343, as amended by Act No. 78 of 1914), valued the minors' half interest in the properties at $6,000. But the testimony of one of the official appraisers is that this value was placed on the minors' *equity*, or the net value of their interest in the properties *after deducting the debts* owing by the community; and this testimony is uncontradicted although the other appraiser was easily available. In other words, the official appraisers undertook to liquidate the community extrajudicially. This they had no right to do, as the adjudication to a parent cotenant of a minor must be for the whole value of the property without deduction; the liquidation of the community, if there be one, should follow and be done judicially. But the fact remains that the official appraisers did as aforesaid.

## III

■ In final analysis these are the contentions of the parties:

Plaintiff contends that the father (who was destituted of the tutorship because of having gone into insolvency) having bought the minors' share in the property for $6,000, there is nothing left for the father (and his surety) but to pay the price regardless of any equities between the father and his children; and he relies on Townsend v. Atterberry, 171 La. 885, 132 So. 411, 412, in support of his position.

That case does not support this contention; it is authority for the proposition that, where a parent has his minor's property adjudicated to him, neither he nor his surety, especially one who becomes such after the adjudication, can complain that the price of

adjudication was too great, no more than any other *purchaser*, or surety for a purchaser, can afterwards complain that the price promised at the time of the sale was too much. But, we said distinctly that "we do not dispute the fact [and it still appears to us indisputable] that the surety on the tutor's bond is liable for only such balance as may be due by the tutor in final accounting." And we see not the least conflict between these two propositions.

■ On the other hand appellant accepts de plein cœur the proposition that the surety, and, for that matter, the principal debtor himself is liable for only such balance as may be due on final accounting. Hence it argues that the father, and by the same token his surety also, may deduct from the price of adjudication the debts with which the adjudicated property was encumbered. But it contends that the estimation of the official appraisers is *conclusive*, and accordingly that the price of adjudication was absorbed more than twice over by (the wife's half of) the debts with which it was burdened. In other words, it contends, and correctly, that the debts due by the community must be deducted from the value of the property belonging to the community before it can be ascertained how much is due the minor heirs of the deceased wife. But it denies that it may be shown that these debts had *already* been deducted from the value of the property at the time when the estimation was made by the official appraisers and the property adjudicated to the father, which was, of course, highly *irregular*, but seems nonetheless to have been the fact.

## IV

■ We do not think that the estimation made by the appraisers at the taking of an inventory is conclusive of the value of the property inventoried. In Babin v. Nolan, 4 Rob. 278, 285, this court said:

"The principal object of the law, in requiring a public inventory to be made of all the effects, moveable and immoveable, belonging to a succession or to a community, is to establish the existence of all the property, and to show the whole amount or value thereof. Such inventory is to contain the estimate of all the effects to be made as to each article, by appraisers, who must be appointed and sworn by the judge or notary who makes the inventory; * * * and after it has been registered, it shall be admitted as proof in courts of justice. * * * Such an inventory is to serve as the basis of the settlement of the estate, so far as it shows the effects, moveable and immoveable, moneys and credits belonging thereto, and so far as it establishes its situation; but we are not ready to say that it should be received as conclusive proof of the real value of the property therein described, so as to be used as the exclusive criterion by which the interested parties are to be charged, in the partition of the property, and settlement of the estate. Except where the law has positively said that the property so inventoried shall be taken at the estimation price, we understand that the estimation made by the appraisers, not being conclusive, must often yield to the proof of its being excessive or incorrect."

We reaffirm this doctrine. Were it otherwise the appraisers, at such inventories, the mere aids and guides of the court, would be

vested with powers more ample and plenary than any confided to the judge himself, whose acts are always subject to review; and surely the law contemplated no such condition.

■ Here the evidence shows that the actual value of the community property exceeded $40,000, but the incumbrances thereon amounted to $25,000; and we think it was competent to show that, in estimating the value of the minors' interest in the community property, the appraisers, though they acted irregularly, did in fact deduct from the whole value of the property the amount of the incumbrances thereon, and that their appraisement represented only the net value of the residuary interest of the minors in the community.

## V

■ For the rest, the bond herein sued upon, given by Cyrille Pecastaing as principal with the defendant indemnity company as surety, was given as well for his administration as natural tutor as for the price of the adjudication made to him. And the tutor surely owes the minors in any accounting between them, the unpaid price of adjudication, which he retained in his hands as certainly as he would owe the minors the price received by him for any other property of theirs sold by him, for which they would have had a two-fold mortgage on all this property; which, however, was released and canceled on the faith of the bond herein furnished. And we have not the least doubt that the tutor owes these minors at least the amount herein claimed, less a deduction hereinafter mentioned; and would undoubtedly have owed them more than this, had the property been adjudicated at its full value in 1928 and the community liquidated regularly by the court instead of by the appraisers in an irregular way. Nor does the fact that these properties fell greatly in value after the adjudication to the father (if in fact they did so), affect the situation in any way; property bought at "boom" prices must be paid for at "boom" prices, even after the inevitable "slump" has come—as a weeping world is now learning to its sorrow—and he who has gone surety for the price must pay in the same coin.

## VI

■ Nor yet does the fact that one of the properties (No. 5, lot at corner of South Third street and Stone avenue) was sold by foreclosure of a mortgage placed thereon *before* the adjudication, affect the situation in any way. The price of adjudication of this lot was the value of the net residuary interest of the minors therein, which *of course* obliged the adjudicatee to assume and pay the mortgage with which it was encumbered or suffer the consequences. With these the minors had nothing to do; no more than any other vendor of his *equity* in some property, must lose the price of his sale if the purchaser loses the property because of his failure to discharge the prior incumbrances thereon.

## VII

■ The *deduction* which we mentioned above is for the property on Dick Taylor street, mentioned above as No. (4). At the time the tutor became a bankrupt it was found that he, and the community, had no title to this property. Of course, a parent to whom property has been adjudicated as the property of his minor children, but which

in fact did not belong to them, is no more liable for the price of adjudication to him than would any other purchaser be liable for the price of something he had bought but had not received. Rev. Civ. Code, arts. 2452, 2475; Winter v. Tounoir, 25 La. Ann. 611. The net residuary interest of the minors in this property was $500, and that amount must accordingly be deducted from the total amount of the adjudication.

## VIII

In Townsend v. Atterberry, 171 La. 885, 132 So. 411, we held that a parent owed no interest on the price of the adjudication to him of his minor child's interest in property held in common, except from the time of final accounting; assigning reasons, to which we adhere.

We also there held, under the express terms of Act No. 225 of 1918, that the surety was not liable for attorney's fees unless the plaintiff recovered the full amount of his claim.

The judgment below must therefore be amended as to the last items mentioned above.

### Decree.

For the reasons assigned the judgment appealed from is amended by reducing the amount allowed plaintiff to $5,500 with legal interest from date of final account (June 10, 1931), and striking therefrom all allowance of attorney's fees; and as thus amended said judgment is affirmed at the cost of appellant in the court below; plaintiff to pay costs of this appeal.

O'NIELL, C. J., concurs in the decree.