LAND, Justice.
 

 (1) On December 18, 1928, Mrs. Annie Norman Pecastaing departed this life in the Parish of Ouachita, intestate, leaving a surviving husband, Cyrille Pecastaing, and several minors. Decedent also left a separate estate, and her undivided half interest in community, acquired during the marriage.
 

 On October 9, 1929, an inventory of the property of the minors was taken. The separate property, which is not involved in this case, was appraised at $4,000, and the undivided half interest of the minors in the community property at $10,000.
 

 On October 10, 1929, the surviving spouse of decedent, and the father of the minors applied to the District Court of Ouachita Parish to be appointed and confirmed as natural tutor of his minor children.
 

 Instead of recording a certificate of the clerk of the amount of the minors’ property according to the inventory on file in his office, and thereby creating a legal mortgage in favor of the minors for the amount therein stated on all the immovable property of the tutor, as provided by Articles 321 and 322 of the Revised Civil Code, Cyrille Pecastaing was permitted by the Court to substitute an indemnity bond for $10,000.00, in lieu of the legal mortgage, under Act 223 of 1920, as amended by Act 68 of 1924 and by Act 283 of 1926, and Act 106 of 1924.
 

 On October 10, 1929, Cyrille Pecastaing filed this bond, executed by him,- as principal, in his capacity as natural tutor of the minors, and signed by defendant, Aetna Casualty & Surety Company of Plartford, Conn., as surety. On the same day, letters of tutorship were issued to him, and he took the oath as natural tutor.
 

 (2) On October 17, 1929, a judgment was rendered by the District Court of
 
 *825
 
 Ouachita Parish, ordering, adjudging and decreeing that the undivided half interest in the property belonging to the minors be adjudicated 'and conveyed to Cyrille Pecastaing, natural tutor and father of the minors, for the price of $6,000, with legal interest thereon from date until paid.
 

 It was further ordered, adjudged and decreed
 
 “that the property remain specially mortgaged for the payment of the above price of
 
 adjudication, and all interest thereon, but the said Cyrille Pecastaing, who is tutor for the said minors,
 
 may cause the cancellation of said mortgage on executing a tutor’s bond in lieu
 
 thereof, in accordance with law, for the sum of Ten Thousand Dollars.”
 

 It was further ordered, adjudged and decreed “that this decree and conveyance shall take effect from and after the acceptance and ratification of same
 
 in all its parts
 
 by the said Cyrille Pecastaing, by authentic act to be filed and recorded with and made part of this decree.”
 

 On October 17, 1929, the petition, affidavit, and judgment granting the special mortgage, and the acceptance and ratification of same in all its parts by Cyrille Pecastaing by authentic act, was filed and recorded in the Clerk’s Office, in Conveyance Book 191, page 549, and in Mortgage Book 154, page 368.
 

 On October 17, 1929, Cyrille Pecastaing, natural tutor, presented a petition to the District Court of Ouachita Parish alleging “That this Honorable Court has fixed the bond at the sum of $10,000 Dollars, and petitioner desires to substitute the surety bond herewith presented for the security given by the aforesaid legal and special mortgages; and, upon approval of said surety bond by this Honorable Court, that he is entitled to an order, ordering and directing the Clerk of Court of the Parish of Ouachita, State of Louisiana,
 
 to cancel and erase the security
 
 for which said bond is substituted.”
 

 The bond of $10,000 was substituted as security, not for a legal mortgage, but for a special mortgage.
 
 No
 
 inscription of certificate of inventory was recorded in the Mortgage Book, but the special mortgage was recorded.
 

 Accordingly, on October 22, 1929, judgment was rendered by the District Court for Ouachita Parish, approving the bond for $10,000, and ordering the Clerk of Court and Ex-officio Recorder of Mortgages to cancel and erase the special mortgage from the records.
 

 As shown by entry made by deputy clerk on October 22, 1929, on back of this judgment, the special mortgage was released and cancelled.
 

 This is the “Natural Tutor’s Bond” for $10,000, dated October 18, 1929, and executed by Cyrille Pecastaing as principal, and signed by plaintiff, Globe Indemnity Company, as surety.
 

 (3) On May 11, 1931, Hon. Percy Sandel, then Judge of the District Court for the Parish of Ouachita, signed the following order;
 

 “The Court having been informed of the fact, which, if proven, would necessitate the removal of the tutor of the minors,
 
 *827
 
 Francis, Lewis, Georgia and Cyrille, Jr., Pecastaing; '
 

 “It is ordered, in accordance with Article Í016 of the Revised Code of Practice of Louisiana, that Peter Pecastaing, under-tutor of said minors, be and is hereby appointed and directed to institute and prosecute the proper action for the removal of Cyrille Pecastaing, from the tutorship of said minors.”
 

 The under-tutor filed a petition alleging:
 

 “That Cyrille Pecastaing, a resident of the City of Monroe, was duly appointed by order of this court ■ rendered on the 10th day of October 1929, Tutor of the above named minors; that upon being appointed, as aforesaid, and after having complied with the requisites of law, the said Tutor assumed the complete administration and control of the said minors’ property.
 

 “Petitioner avers that the administration of the said Tutor has been unfaithful, and that he has been guilty of notoriously bad conduct therein in that he has squandered and wasted the minors’ property, has sold and disposed of some of the property of his deceased wife without making mention of the same in the succession of his said wife, to the detriment of his said children; that as a result of the unfaithfulness of his administration and his notoriously bad conduct he has been forced to file bankruptcy proceedings, listing therein no assets; that the said Tutor is therefore incompetent to administer the property of the said minors with faithfulness and fidelity, and should be removed from his said office of Tutor.”
 

 On the same day, May 11th, 1931, that the order was signed by the court for proceedings to remove the natural tutor, a copy of the petition for removal was served upon the natural tutor in person.
 

 On June 4, 1931, the default entered in open court was confirmed, and the natural tutor was removed by the following judgment:
 

 “This cause having been regularly filed and served and put at issue by default heretofore entered in open court, and two clear judicial days having elapsed without said default having been set aside by answer or otherwise, the plaintiffs having proven their demands in open court, the law and the evidence being in favor of plaintiffs and against the defendant:
 

 “It is Therefore Ordered, adjudged and decreed that the default heretofore entered be made final and that Cyrille Pecastaing, tutor, be and he is hereby removed from the tutorship of his minor children, Francis, Lewis, Georgia and Cyrille, Jr., Pecastaing, and Cyrille Pecastaing is hereby ordered to file an accounting of the tutorship of the minors, Francis, Lewis, Georgia and Cyrille, Jr., Pecastaing in 15 days.”
 

 (4) On June 10, 1931, Cyrille Pecastaing, removed tutor, filed his final account, which shows an unpaid indebtedness, due by him as natural tutor to his minor children of $6,000, the price of the adjudication to him of the undivided half interest of the minors in the community property, and inherited by the minors from their deceased mother.
 

 In the petition accompanying his final account, the removed tutor alleges:
 

 
 *829
 
 “That your petitioner accepted aforesaid adjudication and gave a bond, with the Globe Indemnity Company as surety, for the sum of $10,000 to secure the payment of the purchase price of said property, as required by law and fixed by this Honorable Court.
 

 “That petitioner has'become insolvent, is in bankruptcy, and that the above property, with the remainder of petitioner’s property, has been sold at sale in his bankruptcy proceedings and the entire proceeds from same paid in satisfaction of mortgaged debts and other preferred claims, and that petitioner is without any assets whatever without which he cannot pay any part of the purchase price of the property adjudicated to him as aforesaid, all of which said purchase price, with interest, is still unpaid.”
 

 (5) This admitted indebtedness of $6,000 to the minors was made the basis of the suit filed by the dative tutor of the minors, Peter Pecastaing, against the Globe Indemnity Company, shortly after he was appointed dative tutor of the minors.
 

 This suit is reported in 176 La. 31, 145 So. 259, 260, under the title of Pecastaing v. Globe Indemnity Company, and the record in that case is made available in the present suit by the order of this court.
 

 As stated by Mr. Justice St. Paul in the above cited case:
 

 “This is an action by a dative tutor on behalf of his minors, against their father
 
 and the surety on the bond he gave as their natural tutor
 
 and to secure the price for which his minor children’s property was adjudicated to him as parent holding the property in common with them.
 

 “Act No. 223 of 1920; Act No. 68, 1924 ; Act No. 283 of 1926; Act No. 106 of 1924.
 

 “There was judgment below for plaintiff as prayed for; and the surety appeals.”
 

 The case was appealed to the Supreme Court from a judgment in favor of plaintiff, the dative tutor, rendered by the Fourth Judicial District Court for the Parish of Ouachita, Hon. J. T. Shell, Judge.
 

 The judgment below was amended on appeal, and reduced to $5,500, with legal interest from the date of the final account filed by the removed natural tutor June 10, 1931, and by striking from the judgment all allowance as attorney’s fees, and, as thus amended, was affirmed by the court.
 

 The amount of this judgment, $5,871, including the interest, was paid to Peter Pecastaing, dative tutor ofi the minors, and his receipt by authentic act, in full and complete satisfaction of this ■ indebtedness, was given on June 9, 1933. Transcript, page 37.
 

 (6) The present suit was filed in the District Court for the Parish of Ouachita on April 17, 1935, by the Globe Indemnity Company of New York against Ætna Casualty & Surety Company of Hartford, Conn., as a co-surety, to recover one-half of the judgment paid by Globe Indemnity Company to the dative tutor of the minors, or one-half of the net sum of. $5,871, or $2,935.50, and also oné-half of $827.55, dr $413.27, alleged to have been proper, useful and necessary expenses incurred in contesting and defending the. suit in the
 
 *831
 
 case of Pecastaing v. Globe Indemnity Co., 176 La. 31, 145 So. 259.
 

 In defendant’s answer, it is alleged that the bond which plaintiff, Globe Indemnity Company of New York, signed as surety in the sum of $10,000 was not executed by Cyrille Pecastaing, as principal, in his capacity as natural tutor, but as adjudicatee of certain community property, and that the bond given by plaintiff was given to secure the purchase price of the property adjudicated to Cyrille Pecastaing. In other words, it is contended that this is a special, limited conventional bond. Able counsel for defendant have misapprehended the true character of this bond. In Pecastaing v. Globe Indemnity Co., 176 La. 31, at page 39, 145 So. 259, at page 262, it is said by the court: “For the rest, the bond herein sued upon, given by Cyrille Pecastaing as principal with the defendant indemnity company as surety,
 
 was given as well for his administration as natural tutor as for. the price of the adjudication made to him.
 
 And the tutor surely owes the minors in any accounting between them,
 
 the unpaid price of adjudication,
 
 which
 
 he retained in his hands
 
 as certainly as he would owe the minors the price received by him
 
 for any other property of theirs sold by him,
 
 for which they would have had a two-fold mortgage on all this property; which, however, was released and canceled on the faith of the bond herein furnished.”
 

 As already stated in this opinion, on October 17, 1929, a judgment was signed by the District Court of Ouachita Parish, ordering, adjudging and decreeing that the undivided half interest in the property belonging to the minors be adjudicated and conveyed to Cyrille Pecastaing, natural tutor and father of the minors, for the price of $6,000, with legal interest thereon from. date until paid.
 

 It was further ordered, adjudged, and decreed: “that the property remain specially ^mortgaged for the payment of the above price of adjudication, and all interest thereon, but the said Cyrille Pecastaing,
 
 who is tutor for the said minors,
 
 may cause the cancellation of said mortgage
 
 on executing a tutor’s bond
 
 in lieu thereof, in accordance with law, for the sum of Ten Thousand Dollars.”
 

 This is the bond signed by Globe Indemnity Company of New York, plaintiff in this case, as surety.
 

 The bond which was substituted for the special mortgage reads as follows:
 

 “Natural Tutor's Bond."
 

 “Know all Men By These Presents, That we, Cyrille Pecastaing, as principal, and Globe Indemnity Company, a surety Company of Newark, N. J., as surety, are held and firmly bound unto Hon. Percy Sandel, Judge of the Fourth District Court of Ouachita Parish, State of Louisiana, or to his successors in office, in the sum of Ten Thousand ($10,000.00) Dollars, for the payment of which we bind ourselves, and each of us and each of our heirs, executors and administrators, jointly and severally and firmly by these presents:
 

 “Dated this 18th day of October, 1929.
 

 “The
 
 condition
 
 of the above obligation is such, that if the above bounden,
 
 Cyrille
 
 
 *833
 

 Pecastaing, as Natural Tutor
 
 of the minors, Francis, Georgia, Lewis and Cyrille, Jr.,
 
 do well and truly administer the property of said minors, and further make a fust and perfect account of all his actions and doings in that capacity, and shall account to the said minors for the price of said minors’ property adjudicated to said Cyrille Pecastaing, under date of October 17th, 1929,
 
 and delivers up and pays unto such person or persons, respectively, as are entitled to the same, all the goods and chattels, rights and credits which may remain in his hands or possession belonging to the said minors, Francis, Georgia, Lewis and Cyrille, Jr., when his administration shall expire, then this obligation to be void; otherwise to remain in full force and virtue.
 

 “In witness whereof, we have hereunto set our hands and seals the day and year first above written.
 

 “(Signed) C. Pecastaing,
 

 “(Signed) Globe Indemnity Co.,
 

 “By Louis Humphries
 

 “Attorney in Fact”
 

 “(Seal).
 

 In other words, as held by this court in Pecastaing v. Globe Indemnity Co., 176 La. 31, 145 So. 259, 262, the bond for $10,000 signed by plaintiff, Globe Indemnity Company, was not a bond
 
 restricted
 
 to the payment of the price of the half interest in the community owned by the minors, and adjudicated to Cyrille Pecastaing, but
 
 “was given as well for his administration as natural tutor, as for the price of the adjudication made to him",
 
 and that the tutor, under his bond, “would owe the minors the price received by him
 
 from any other property
 
 of theirs sold by him.”
 

 (7) In our opinion, the defendant, /Etna Casualty & Surety Company, under the bond for $10,000 executed by Cyrille Pecastaing, as principal, and signed by defendant as surety,, is likewise responsible for his administration as natural tutor, and for the price of the adjudication made to him, and would owe the minors the price received by him from any other property of theirs sold by him.
 

 The public' policy of this State forbids a conventional, restricted bond, in the matter of tutorships. Such bonds are purely statutory, and the statutes of the State relative to such bonds are read into them, and conventional stipulations in tutorship bonds, contrary to such statutes, are read out of them, as if not written therein.
 

 Since, by order of Court, in the tutorship proceedings, the bond signed by defendant, /Etna Casualty & Surety Company, as surety, was furnished
 
 in lieu of the legal mortgage,
 
 which otherwise would have been inscribed against Cyrille Pecastaing as natural tutor of his minor children, the determination of the obligation of the surety on such a bond to the minors involves a consideration of the obligations of the tutor to the minors which would have been secured
 
 by the legal mortgage that the bond replaced.
 
 In this connection, we quote the following pertinent articles of the Civil Code:
 

 C. C. art. 3314:
 

 “Minors, persons interdicted and absentees, have a legal mortgage on the
 
 *835
 
 property of their tutors and curators, as a security for their administration, from the day of their appointment until the liquidation and settlement of their final account. * * * ”
 

 C. C. art. 321:
 

 “In the several cases in which the tutor is not required by law to give bond, it shall be the duty of the cleric of the district court of the parish in which the appointment is to be made, to furnish a certificate of the amount of the minor’s property according to the inventory on file in his office. This certificate must be recorded in the mortgage book of the parish in which the tutor resides; and a certificate to that effect, signed by the recorder of mortgages, must be presented to the judge before he can make the appointment, or authorize letters of tutorship to be issued.”
 

 C. C. art. 322:
 

 “The recording of the bond or certificate of the clerk as herein provided, shall operate as a legal mortgage in favor of the minor for the amount therein stated, on all the immovable property of the tutor.”
 

 (8) The statutes in force at the time that Cyrille Pecastaing as natural tutor gave this bond in lieu of a legal mortgage, and authorizing such
 
 a substitution of security,
 
 are Act 223 of 1920, as amended by Act 68 of 1924 and by Act 283 of 1926, and Act 106 of 1924 (Dart’s La.Stats. Sections 4873-4882). Section 1 of Act 223 of 1920, as amended by Act 68 of 1924, authorizes the giving of such a bond
 
 "in place of the general mortgage arising from the recordation of the certificate
 
 of the Clerk of Court of the
 
 amount
 
 of the minor’s property as
 
 shown
 
 by the inventory.”
 

 We also quote as follows from Section 3 of Act 223 of 1920, as amended by Act 68 of 1924 and by Act 283 of 1926:
 

 "the intent being that the bond or security should protect the minor to the full extent that the security furnished by the general or special mortgage or mortgages securing the price of adjudication
 
 of minor’s property or mortgage given in place thereof under Article 344 of the Revised Civil Code may be released.”
 

 Under the statutory provisions cited, the bond signed by defendant, Aetna Casualty & Surety Company,
 
 stands exactly in the place of the legal mortgage,
 
 for which it was substituted as security, and is security
 
 "to the full extent”, that the legal mortgage itself would have been operative as security,
 
 had the legal mortgage been recorded, and no substitution of the bond for the legal mortgage had taken place. And as specifically stated in C.C. art. 3314, this bond, like a legal mortgage against the tutor, is operative as security
 
 "from the day of their
 
 [kir]
 
 appointment until the liquidation and settlement of their
 
 [kiri]
 
 final account.”
 

 (9) Necessarily, the decisions of this court defining the scope, and extent of the liabilities of a natural tutor to his minor wards, secured by a legal mortgage, are applicable here.
 

 In the leading case of Schneider v. Burns, 45 La.Ann. 875, 13 So. 175, 177, the court, in an elaborate discussion of principles of law applicable to the case, made the following statements:
 

 
 *837
 
 “It has been repeatedly held by this court that the legal mortgage of the minor was not for the accounting of any particular sum of money or property, but for his faithful administration during the whole period of the tutorship. * * *
 

 “It was clearly the intention of the legislature to secure to the minor the faithful administration of the tutor up to the moment of his final discharge, and therefore the amount secured by the mortgage is not necessarily to be ascertained at the moment the mortgage was executed. * * * •
 

 “The law has always been, and is, that minors have a legal mortgage upon the property of their tutors from the day of their appointment until the liquidation and settlement of their final account. Civil Code, art. 3314. * * *
 

 “We think it beyond question that the mortgage resulting from the inscription of the certificate of the clerk was not intended by the lawmakers to represent simply a debt then due to the minors, but was to secure, up to the amount mentioned, the faithful administration of the tutor, and to cover his eventual liability when the tutorship shall terminate, and a settlement with his ward shall be made. Succession of -Kuntz, 34 La.Ann. [852] 855.”
 

 (10) Cyrille Pecastaing, at the expiration of his tutorship, filed a final account of his gestión as natural tutor, showing an .indebtedness to his minor wards of $6,000. The above decision, clearly demonstrates that this indebtedness was a liability of such a character that would be secured, unquestionably, by the minor’s legal mortgage against the property of the natural tutor.
 

 It follows from this, that the .liability of the natural tutor to his minor wards, disclosed by this final account (the identical liability which was enforced against the Globe Indemnity Company as surety of the tutor in the prior suit) could have been enforced with equal success by the dative tutor against defendant, Aetna Casualty & Surety Company, as surety of the natural tutor, since, the bond signed by defendant company stands, for security purposes, as the exact equivalent of the legal mortgage, “in lieu of which,” it was given.
 

 (11) It is immaterial that the item of $6,000 shown to be due the minor wards on the final accounting of his administration filed by the .natural tutor, did not represent monies actually possessed, handled.and administered by the natural tutor for the account of his minor wards, since such monies come within the scope of the -security (legal mortgage or bond) given by the natural tutor for his tutorship administration. It was squarely held by this court in Succession of Triche, 34 La.Ann. 1148, that :■
 

 “Debts from a tutor individually to himself in his fiduciary capacity,
 
 when they become due. and exigible during the term of the tutorship,
 
 are considered as collected by him and are secured by the legal mortgage on all his immovables,
 
 resulting from his tutorship and proper inscription.”
 

 Besides, it was specifically held by this Court in the case of Pecastaing v. Globe Indemnity Co., 176 La. 31, at page 39, 145 So. 259, at page 262, that “the tutor surely owes the minors in any .accounting between
 
 *839
 
 them,
 
 the unpaid price of the adjudication, which he retained in his hands
 
 * * *
 

 (12) The bond for $10,000 signed by defendant, Aetna Casualty & Surety Company of Hartford, Conn., omitting the caption of the tutorship proceedings, reads as follows:
 

 “Bond of Administrator
 

 “Know all men by These Presents, That We,
 
 Cyrille Pecastaing, as principal, and Aetna Casualty & Surety Co. of Hartford, Conn., as surety,
 
 are held and firmly bound unto Percy Sandel, Judge of said court, in and for the Parish of Ouachita, or-to his successors in office, in the sum of
 
 Ten Thousand & no/100 Dollars
 
 for the payment of which we bind ourselves, and each of us, and each of our heirs, executors and administrators, jointly and severally and firmly by these presents. Dated this 10 day of October A. D. 1929.
 

 “The
 
 condition
 
 of the above obligation is such, that if the above bound
 
 Cyrille Pecastaing has been appointed Tutor
 
 to the above named minors, and if he does
 
 well and truly,
 
 according to law,
 
 administer.
 
 the same and further, does make and
 
 render a true, just and perfect account
 
 of his actions and doings, when hereunto lawfully required, either by the aforesaid Judge or his successors in office, agreeably to law, or by heirs of said deceased, or their lawful Attorney or Attorneys or by the duly appointed and authorized executor or executors of the last will and testament of the said deceased, should it hereafter appear that any such will or testament was- by the said deceased made, then this obligation to be void, or else to remain in full force and virtue.
 

 “In witness whereof, we have hereunto set our hands, this day and year above written.
 

 “(Signed) C. Pecastaing
 

 “(Signed) Aetna Casualty & Surety Co.
 

 “S. M. McReynolds, Agent
 

 “In Presence Of
 

 “(Signed) A. H. Newsom
 

 “(Seal)
 

 We have' no hesitancy in holding that the above bond, under the statutes under which it was given, and under the articles of the Civil Code, and authorities herein cited, was signed by the surety, as well for Cyrille Pecastaing’s administration as natural tutor, as for the price of the adjudication made to him.
 

 (13) We therefore have in this case two sureties bound for the same debtor and the same debt. The plaintiff’s action to recover one-half the debt and one-half of the expenses incurred in defending the suit against it in the case of Pecastaing v. Globe Indemnity Co., 176 La. 31, 145 So. 259, is based upon Article 3058 of the Revised Civil Code.
 

 Plaintiff has already paid the judgment obtained against it by the dative tutor of the minors of Cyrille Pecastaing in that case.
 

 Article 3058 of the Revised Civil Code of this State is a transcript of article 2033 of the Code Napoleon. Our article reads as' follows: •
 

 “When several persons have been sureties for the same debtor and for the same
 
 *841
 
 debt, the surety who has satisfied the debt, has his remedy against the other sureties in proportion to the share of each; but this remedy takes place only, when such person has paid in consequence of a lawsuit.”
 

 The construction placed upon this article of the Code, in view of the construction placed upon Article 2033 of the Code Napoleon by the French commentators, was held by the Supreme Court to be: When two sureties are bound for the same debtor and the same debt, even though these suretyship obligations arise out of separate bonds executed on different dates, they are co-sureties, and the co-surety compelled to pay the whole by suit and final judgment against it is entitled to pro rata reimbursement from the other co-surety. R.C.C. Art. 3058; Phillips v. Pedarre, 156 La. 509, 100 So. 699.
 

 Plaintiff is also entitled to recover one-half of the expenses of defending the pri- or suit, as the amount and propriety of these expenses were established by the evidence takén at the trial.
 

 The recoverability of one-half of these expense items is clearly established by the following authorities:
 

 United States Fidelity & Guaranty Co. v. Naylor et al., 8 Cir., 237 F. 314, page 323:
 

 “Where several cosureties are liable for a common debt or default, and none of them pays without suit, one who is sued and compelled to pay the judgment, to pay court costs, expenses, and interest, is entitled to contribution on account of those costs and expenses and that interest to the same extent that he is entitled to contribution on account of the principal of the debt he has paid, provided his defense to the suit was not frivolous, but was prudent and hopeful, though unsuccessful.
 

 “Carter v. Fidelity & Deposit Co., 134 Ala. 369, 32 So. 632, 633, 92 Am.St.Rep. 41; Fletcher v. Jackson, 23 Vt. 581, 593, 56 Am.Dec. 98; Gross v. Davis [87 Tenn. 226] 11 S.W. 92, 93, 10 Am.St.Rep. 635; 1 Brandt on Suretyship & Guaranty (3 Ed.) § 309; Davis v. Emerson, 17 Me. 64; Boutin v. Etsell, 110 Wis. 276, 85 N.W. 964, 965; Backus v. Coyne, 45 Mich. 584, 8 N.W. 694; Van Winkle v. Johnson, 11 Or. 469, 5 P. 922, 924, 50 Am.Rep. 495; Briggs v. Boyd, 37 Vt. 534, 536.”
 

 50 C.J. 301:
 

 “Contribution can be had as to costs incurred in a suit by the creditor against one surety alone which are paid by him, if defense of the suit was reasonably prudent and justifiable, or resulted in a reduction of the demand of the creditor; and contribution for attorney’s fees paid in resisting the claim of the creditors is allowed under the same conditions.”
 

 By the appeal to this court (Pecastaing v. Globe Indemnity Co., 176 La. 31, 145 So. 259), the principal amount of the judgment against Globe. Indemnity Company was reduced from $6,000 to $5,500; the date from which legal interest on the principal amount of the judgment was allowed was changed from the date of the adjudication, October 17, 1929, to the date of the final account, June 10, 1931; and the allowance
 
 *843
 
 of-10% attorney’s fees on the principal and interest was eliminated from the judgment.
 

 These three items reduced the total amount under the judgment to the extent of approximately $2,000, and from the viewpoint of the defendant, litigation to a court of last resort was warranted.
 

 Under the law and the facts of the case, Globe Indemnity Company of New York, plaintiff, is entitled to recover of defendant, Aetna Casualty & Surety Company, of Hartford, Conn., both one-half of the amount paid in satisfaction of the final judgment, $2,935.50, and one-half of the proper expenses in defending the prior suit, $413.77, or the full sum of $3,349.27, with legal interest thereon from January 9, 1933, until paid, and all costs of court.
 

 The proper and necessary expenses in contesting and defending the suit are itemized as follows:
 

 Attorney’s fees ................. $500.00
 

 Premium on appeal bond......... 84.00
 

 Cost of preparing transcript of appeal ......................... 75.00
 

 Filing fee on appeal......;...... 25.00
 

 Cost of printing briefs........... 73.75
 

 Cost of obtaining abstract of property involved ................. 35.00
 

 Traveling expenses of counsel.... 28.00
 

 Express charges'on records....... 2.34
 

 Long Distance telephone calls.... 2.30
 

 Telegrams ..................... 1.58
 

 Postage on briefs................ .33
 

 Affidavit to motion.............. .25
 

 Total ..................$827.55
 

 One-half ............... $413.77
 

 (14) The case was regularly reached on the docket, called “for trial and taken up and tried. The demands of plaintiff, Globe Indemnity Company of New York, were rejected in the lower court at its costs, and from this judgment, plaintiff appealed to this court.
 

 In our opinion the judgment appealed from is erroneous.
 

 It is therefore ordered, adjudged and decreed that the judgment appealed from by plaintiff, Globe Indemnity Company of New York, be and the same is hereby annulled and reversed.
 

 It is now ordered that there be judgment in favor of plaintiff, Globe Indemnity Company of New York, and against defendant, its co-surgty, Aetna Casualty and Surety Company of Hartford, Conn., in the full sum of Three Thousand, Three Hundred, Forty-nine and 27/100 Dollars, ($3,349.27) together with legal interest from January 9, 1933, until paid, and for all costs of court.
 

 O’NIELL, C. J., does not take part
 

 ROGERS,
 
 J., dissents.